IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00234-RMR-KLM

ATLANTIC RICHFIELD COMPANY,

    Plaintiff and Counterdefendant,

v.

NL INDUSTRIES, INC. and
NL ENVIRONMENTAL MANAGEMENT SERVICES,

    Defendants, Counterclaimants, and Third-Party Plaintiffs,

v.

THE UNITED STATES OF AMERICA, et. al

    Third-Party Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Plaintiff's **Opposed Motion to Amend the Complaint** [#153][1] (the "Motion"). Defendants NL Industries, Inc. and NL Environmental Management Services (collectively, "NL") filed a Response [#158] in opposition to the Motion, and Plaintiff filed a Reply [#159]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#153] be **GRANTED**.

---

[1] "[#153]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

-1-

## I. Background[2]

Between 1925 and 1927, Rico Mining and Reduction Company ("RMRC"), a predecessor of Defendants, owned and operated various mining operations near Telluride, Colorado. *Compl.* [#1] ¶¶ 13-14. The specific mining location at issue in this suit is within the Rico-Argentine Site, near Rico, Colorado (the "Site"). *Id.* ¶ 1. The relevant portions of the Site are a tunnel (the "St. Louis Tunnel") and connected crosscuts, drifts, raises, and other underground mine workings as well as a series of settling ponds, some of which are backfilled and some of which contain sludge material. *Id.* ¶ 13.

St. Louis Smelting and Refining Co. ("St. Louis") acquired all of RMRC's assets and liabilities in 1927 and operated mining properties formerly owned by RMRC. *Id.* ¶¶ 7, 14-15. St. Louis constructed the St. Louis Tunnel to collect and transfer acid mine drainage ("AMD"), which was then drained into the Dolores River watershed. *Id.* ¶ 16. Two other construction projects were similarly connected to the St. Louis Tunnel, creating further conveyances for the release, transport, and disposal of AMD into the Dolores River. *Id.* ¶¶ 17-20. St. Louis abandoned and relinquished all of its assets at the Site in 1943 and was dissolved in 1948. *Id.* ¶ 21. St. Louis's assets, property, debts, obligations, and liabilities were distributed to and expressly assumed by National Lead Company. *Id.* In 1971, National Lead Company changed its name to NL Industries, Inc. *Id.* ¶ 8. Defendant NL Environmental Management Services is a wholly owned subsidiary of Defendant NL Industries, Inc. *Id.* ¶ 9.

In December 2010, the United States Environmental Protection Agency ("EPA") drafted an Action Memorandum (the "Memo") requesting a removal action to address

---

[2] The information recited in this section is based on the allegations of the currently operative complaint [#1].

-2-

environmental concerns at certain locations and facilities at the Site. *Id.* ¶ 22. The goal of the Memo, according to the EPA, was to "minimize or prevent the on-going release and potential release of hazardous substances being discharged from the St. Louis Tunnel and the associated settling ponds into the Dolores River and surrounding wetlands." *Id.*

Pursuant to its authority under Section 106(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9606(a), the EPA issued a Unilateral Administrative Order ("UAO") on March 23, 2011, which required Plaintiff to implement a removal action addressing these environmental concerns at the Site (the "Removal Action") and which set forth a detailed workplan with a completion schedule. *Id.* ¶¶ 3, 23. In the Complaint [#1], Plaintiff states that "the EPA [has] alleged that [Plaintiff] is a successor to prior owners and operators of facilities at the Site including the Rico Argentine Mining Company." *Id.* ¶ 5. It is unclear from the Complaint [#1] whether Plaintiff contests the EPA's allegation or, if not, when Plaintiff obtained its interest in the Site. Regardless, in response to the UAO, Plaintiff has made substantial clean-up progress, spending an amount in excess of $63.7 million dollars. *Id.* ¶ 25.

A substantial portion of the waterflow and discharge targeted by the EPA comes from the St. Louis Tunnel and other facilities where Defendants' predecessors also conducted mining operations. *Id.* ¶¶ 31-32. Due to these mining actions and the resultant costs incurred under the UAO by Plaintiff, Plaintiff presents two claims for relief against Defendants in the initial, currently operative Complaint [#1]: (1) cost recovery pursuant to CERCLA § 107(a), and (2) declaratory relief pursuant to CERCLA § 113(g)(2). *Id.* ¶¶ 34-49.

Plaintiff initially filed the claim under CERCLA § 107 based on Defendants' purported joint and several liability with Plaintiff for the costs Plaintiff has incurred and will continue to incur under the UAO. *Motion* [#153] at 2. However, before the initial scheduling conference in August 2020, Plaintiff advised the Court and Defendants that Plaintiff had begun negotiations with the EPA for an Administrative Settlement and Order on Consent for Removal Action (the "AOC"). *Id.* Plaintiff advised that, once the AOC was signed, it would be required as a matter of law to amend its Complaint [#1] to add a CERCLA § 113 claim for contribution and remove the CERCLA § 107 claim for joint and several liability. *Id.* Defendants then filed a Motion for Summary Judgment [#97] regarding Plaintiff's CERCLA § 107 claim, which remains pending. Thereafter, the Court granted Defendants' request for a stay pending resolution of the Motion for Summary Judgment [#97]. *Order* [#151]. Since that time, the anticipated AOC has been signed between Plaintiff and the EPA. *Motion* [#153] at 3. As a consequence of the AOC, in the present Motion [#153] Plaintiff seeks leave to amend its Complaint [#1] to add the CERCLA § 113 contribution claim and remove the initially pled CERCLA § 107 joint and several liability claim.

## II. Analysis

### A.   Rule 15(a)(2)

As an initial matter, because no pretrial deadlines have yet been set, including a deadline for amendment of pleadings, the Motion [#153] is timely, and the Court thus turns directly to Rule 15(a). *See Lopez v. Next Generation Constr. & Env't, LLC*, No. 16-cv-00076-CMA-KLM, 2017 WL 10311221, at *2 (D. Colo. Nov. 13, 2017). Under Rule 15(a)(2), the Court has discretion to grant a party leave to amend its pleadings. *Foman*

*v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P 15(a)(2) ("The court should freely give leave when justice so requires.").

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, "be freely given."

*Foman*, 371 U.S. at 182 (quoting Fed. R. Civ. P. 15(a)(2)).

Here, Defendants argue that the proposed amendment would be futile. *Response* [#158] at 2-3; *see also Reply* [#159] at 1-2. An amendment is futile only if it would not survive a motion to dismiss. *See Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (citing *Jefferson Cnty. Sch. Dist. v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999)). In other words, "the futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). When examining whether a party has failed to state a claim, courts look to "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

Plaintiff argues that the proposed amendment would not be futile because Plaintiff is required by CERCLA jurisprudence to amend and remove its § 107 claim and add a § 113 claim due to Plaintiff's settlement agreement with the government. *Motion* [#153] at 4. Plaintiff states that the Court and the parties, particularly Defendants, were aware of Plaintiff's negotiations with the EPA and Plaintiff's intent to amend after an AOC was executed. *Id.* at 5.

Defendants argue that CERCLA cannot be applied retroactively to them under these circumstances and, therefore, the proposed amendment is futile. *Response* [#158] at 2-3. Defendants maintain that any alleged damage committed by their predecessors occurred no later than 1943 (when St. Louis abandoned and relinquished its assets at the Site), which is more than 78 years ago and more than 37 years before CERCLA was enacted. *Id.* at 9. To support their position that CERCLA cannot be applied retroactively to them, Defendants cite three Supreme Court cases. *Id.* These cases note that the Supreme Court counsels against applying statutes retroactively absent clear congressional intent favoring such a result, that retroactivity is generally disfavored in the law, and that the presumption against retroactive legislation is older than our Republic. *Id.* at 9-10 (citing *Landgraf v. USI Film Prods.*, 511 US 244, 280 (1994); *E. Enters. v. Apfel*, 524 U.S. 498, 532 (1998); *Vartelas v. Holder*, 566 U.S. 257, 265-66 (2012)). Defendants assert that granting the Motion [#153] would force them to shoulder an enormous financial burden relating to cleanup of a property that they have had nothing to do with since 1943, which they believe is the type of result from retroactivity which the Supreme Court has tended to eschew.

Responding to this argument, Plaintiff asserts that there is no serious legal question about whether CERCLA applies retroactively, as the language and legislative history are clear that it has a retroactive effect. *Reply* [#159] at 2. Further, Plaintiff states that courts in every jurisdiction which has taken up this question over the last twenty-plus years have all concluded that CERCLA applies retroactively. *Id.* "At least 28 federal district courts and seven (7) federal circuit courts by [Plaintiff's] count, have determined that CERCLA is retroactive." *Id* at 3. In responding to Defendants' argument regarding

the presumption against retroactivity, Plaintiff notes that the cases cited by Defendants do not address CERCLA but rather involve the Civil Rights Act of 1991, the Coal Act, and the Illegal Immigration Reform and Responsibility Act.  *Id.* at 4.  Plaintiff cites several cases addressing the retroactive scheme of CERLA and its constitutionality, all of which have "uniformly held that CERCLA continues to pass constitutional muster."  *Id.* (quoting *United States v. Alcan Aluminum Corp.*, 315 F.3d 179, 188-190 (2nd Cir. 2003)).

Due to the presumption against retroactive legislation, the Court first examines whether there is clear congressional intent favoring such a result.  First, the Court notes that there is no express language in either contested section of CERCLA regarding its applicability to past conduct.  However, in the language chosen deliberately by Congress for the main liability provision of § 107, the statute refers to parties and actions in the past tense multiple times: (1) "any person who *at the time of disposal* of any hazardous substance *owned* or *operated* any facility at which such hazardous substances *were disposed of*," 42 U.S.C.A. § 9607(a)(2) (emphases added), (2) "any person who . . . *arranged* for disposal or treatment, or *arranged with a transporter* for transport for disposal or treatment," 42 U.S.C.A. § 9607(a)(3) (emphases added), and (3) "any person who accepts or *accepted* any hazardous substances for transport to disposal or treatment facilities . . . *selected* by such person . . . ." 42 U.S.C.A. § 9607(a)(4) (emphases added).  Relating to this, § 113 states that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. . . ."  42 U.S.C.A. § 9613(f)(1).  Therefore, the Court finds that the statutory language and use of the past tense shows that Congress intended it to be applicable to prior

conduct, regardless of whether a claim is advanced under § 107 or § 113. *See U.S. v. Olin Corp.*, 107 F.3d 1506, 1513 (11th Cir. 1997); *Franklin Cnty. Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 552 (6th Cir. 2001).

      Next, the Court looks to the legislative history to determine Congressional intent regarding whether CERCLA can be applied retroactively. The Eleventh Circuit, in examining the legislative history of the statute, found that "[t]he chief predecessor bill to CERCLA, S. 1480, contained no express statement regarding retroactivity. Nonetheless, all those commenting on [it and the parallel House bill] expressed the belief that the bills would apply retroactively to those responsible for the releases in existing waste sites." *Olin Corp.*, 107 F.3d at 1514 (internal quotations omitted). Further, when examining the scheme of CERCLA itself and the purpose for which it was passed, a clear intent to be remedial and retroactive is shown. *See generally* H.R.Rep. No. 1016, 96th Cong., 2d Sess., *reprinted in* 1980 U.S. Code Cong. & Ad. News 6119. Only a few years ago, the Second Circuit examined the legislative history of CERCLA and found that "it is by now settled that Congress intended CERCLA to have such retroactive effect." *ASARCO LLC v. Goodwin*, 756 F.3d 191, 200 (2nd Cir. 2014). Therefore, the Court finds that the legislative history points to CERCLA having retroactive effect.

      Third, the Court looks to judicial precedent to examine whether CERCLA can be applied retroactively to Defendants in this case. A review of the relevant case law indicates that CERCLA has consistently been applied retroactively throughout the nation. The Tenth Circuit has stated that CERCLA liability need not be proven by direct evidence, and that "[t]his is particularly true for cases involving older hazardous substance disposal, 'as eyewitness testimony or other direct evidence concerning specific waste disposal

practices . . . during the 1940s—well before the enactment of environmental laws—is rarely available.'" *Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1271 (10th Cir. 2017) (quoting *Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 892 (10th Cir. 2000)). This is a clear indication that the Tenth Circuit interprets CERCLA to apply to conduct that occurred even decades before the statute's enactment. *See also Commonwealth Edison Co. v. U.S.*, 271 F.3d 1327, 1351 (Fed. Cir. 2001) (stating that CERCLA by its terms has unlimited retroactivity); *Olin Corp.*, 107 F.3d at 1513 (asserting that Congress manifested a clear intent to reach conduct prior to enactment); *Franklin Cnty. Convention Facilities Auth.*, 240 F.3d at 552 (stating that CERCLA is intended to function retroactively); *U.S. v. Ne. Pharm. & Chem. Co.*, 810 F.2d 726, 732-33 (8th Cir. 1986) (acknowledging that there is no express statement from Congress regarding retroactivity and that the conduct at issue had occurred years prior to CERCLA enactment, but holding that it is manifestly clear that Congress intended CERLCA to apply retroactively). The Court therefore finds that judicial interpretations of CERCLA consistently find that the statute has retroactive effect.

Lastly, the Court briefly addresses the Supreme Court cases that Defendants cite and their relationship to CERCLA. *Response* [#158] at 9-10 (citing *Landgraf v. USI Film Prods.*, 511 US 244, 280 (1994); *E. Enters. v. Apfel*, 524 U.S. 498, 532 (1998); *Vartelas v. Holder*, 566 U.S. 257, 265-66 (2012)). As noted, those cases do not address CERCLA retroactivity, and other circuits have found that these cases are inapplicable in this context based on the clear Congressional intent that the statute would apply to prior conduct. The Eleventh Circuit found that while *Landgraf v. USI Film Products* does alter the way lower courts address retroactivity, CERCLA's structure and legislative history provide enough

evidence to overcome this presumption. *Olin Corp.*, 107 F.3d at 513-14. The Sixth Circuit later addressed *Eastern Enterprises v. Apfel* and found its discussion of the presumption against retroactivity to be inapplicable to CERCLA. *Franklin Cnty. Convention Facilities Auth.*, 240 F.3d at 552. The Sixth Circuit found that *Apfel* is not directly relevant because no single rationale was agreed on by the Supreme Court and because Congress intended CERCLA to reach past conduct. *Id.* While the Circuit Courts have not addressed the presumption against retroactivity discussed in *Vertelas v. Holder* and its potential relationship to CERCLA, the Court finds it inapplicable in this case. *Vertelas* involved a dispute over the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), and whether a lawful permanent resident who had committed a crime before the passage of IIRIRA could then be permanently banned from re-entering the United States after briefly visiting his family abroad after the passage of IIRIRA. *Vertelas*, 566 U.S. at 260-61. Given that immigration law and environmental law are separate legal fields and that the language and legislative history of IIRIRA and CERCLA are naturally different, the Court finds *Vertelas* and its discussion of the presumption against retroactivity to be unpersuasive in this case.

In light of the chosen language of the statute, its legislative history, the judicial consistency in applying CERCLA retroactively, and persuasive authority from other circuits specifically holding that the cases cited by Defendants do not apply to CERCLA, the Court finds that Plaintiff's CERCLA § 113 claim is not futile and that the complaint may be amended. Accordingly, the Court **recommends** that the Motion [#153] be **granted** and the proposed Amended Complaint [#153-2] be accepted for filing.

B.     The CERCLA § 107 Claim

Defendants argue in their Response that, if the Court grants the Motion [#153] and allows Plaintiff to amend the Complaint [#1] to assert a CERCLA § 113 claim, the Court should explicitly dismiss the CERCLA § 107 claim with prejudice. *Response* [#158] at 12-16.

At the outset, the Court notes that Plaintiff, throughout its briefs, generally speaks of *substituting* the CERCLA § 113 claim in place of the CERCLA § 107 claim. Technically, this is a misnomer. Although parties and even the courts occasionally use this terminology when discussing these types of amendments, the Federal Rules of Civil Procedure use "substitution" only with respect to substituting parties, *not* claims. *See generally* Fed. R. Civ. P. 15, 17, 25. Thus, what Plaintiff actually seeks through amendment is dismissal of one claim, i.e., the CERCLA § 107 claim, and the addition of a different claim, i.e., the CERCLA § 113 claim. This means that, in granting the Motion [#153], the CERCLA § 107 claim is technically being dismissed, which leaves the question of whether dismissal with or without prejudice is appropriate. For the following reasons, the Court finds that dismissal without prejudice is appropriate under the circumstances of this case.

First, Plaintiff has conceded that it cannot pursue a CERCLA § 107 claim *at this time* and it is clear from the briefs and the proposed Amended Complaint that Plaintiff is asking to have this claim dismissed, despite generally using the "substitution" language discussed above. The Court declines to make an advisory ruling on whether such a claim may be viable, either procedurally or on the merits, at some time in the future under a different set of circumstances. Relatedly, Defendants' assertion that they could "potentially be subjected to these same stale claims, again at some future date," is pure

-11-

speculation. *Response* [#158] at 12. For these reasons alone, dismissal with prejudice is inappropriate.

Second, although the Court makes no ruling on this issue, Plaintiff makes a colorable argument that dismissal of the CERCLA § 107 claim should be premised on lack of standing. *Reply* [#159] at 5-8; *see also id.* at 5 ("When [Plaintiff] acquired standing to pursue a section 113 claim, it lost its standing to bring a section 107 claim to recover the same costs."). Standing is a subject matter jurisdiction issue, which would therefore require dismissal without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (stating that "standing is a jurisdictional mandate," and holding that dismissal for lack of standing must be without prejudice)).

Accordingly, the Court **recommends** that Defendants' request to premise allowing amendment of the Complaint [#1] by dismissing the CERCLA § 107 claim with prejudice be **denied** and that Plaintiff's CERCLA § 107 claim be **dismissed without prejudice**.

### III. Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motion [#153] be **GRANTED**, that Plaintiff's CERCLA § 107 claim be **DISMISSED without prejudice**, and that the Clerk of Court accept Plaintiff's Amended Complaint for filing. *See* [#153-2] at 2-15.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v.*

*Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corrs.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: April 1, 2022

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge