# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.1:20-cv-00234-RMR-KLM

ATLANTIC RICHFIELD COMPANY,

    Plaintiff and Counterdefendant,

v.

NL INDUSTRIES, INC. and
NL ENVIRONMENTAL MANAGEMENT SERVICES,

    Defendants, Counterclaimants, and Third-Party Plaintiffs,

v.

THE UNITED STATES OF AMERICA, et al.,

    Third-Party Defendants.

## FIRST AMENDED COMPLAINT

Plaintiff Atlantic Richfield Company ("Atlantic Richfield"), for its First Amended Complaint against Defendants NL Industries, Inc. ("NL") and NL Environmental Management Services ("NL Environmental") (collectively "NL Defendants"), states as follows:

### NATURE OF THE ACTION

1. This is an action under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq. ("CERCLA"). In this action, Atlantic Richfield seeks contribution for certain costs it has incurred, and will incur in the future, responding to releases and threatened releases of hazardous substances at certain facilities and locations within the Rico-Argentine Site, near Rico, Dolores County, Colorado (the "Site").

4885353.3

-2-

2. From 1925 until 1943, the NL Defendants' predecessors owned and operated various properties within the Site and were responsible for the disposal and release of hazardous substances into the surrounding environment.

3. Atlantic Richfield has incurred substantial expenses in connection with a unilateral administrative order issued by the United States Environmental Protection Agency ("EPA") in March 2011 (the "UAO") directing Atlantic Richfield to implement a removal action addressing environmental conditions at certain discrete facilities and locations within the Site, specifically the St. Louis Tunnel, its associated settling ponds, and certain underground mine workings connected to the St. Louis Tunnel and including the Northwest Workings, the Argentine Workings, the Northwest Crosscut, and the Mountain Springs Raise (the "Removal Action").

4. On December 6, 2021, Atlantic Richfield and EPA entered into an Administrative Settlement Agreement and Order on Consent for Removal Action (the "AOC") and Atlantic Richfield thereby settled its liability to the United States for the matters addressed by the AOC. The AOC continues the Removal Action work begun under the UAO, and Atlantic Richfield will continue to incur substantial response costs under the AOC for the Removal Action.

5. Although disposals and releases of hazardous substances by the NL Defendants' predecessors contributed to the conditions that are being addressed by the Removal Action, to date, the NL Defendants have refused requests from Atlantic Richfield to bear any of the costs of implementing the Removal Action. Accordingly, in this lawsuit, Atlantic Richfield seeks an order directing the NL Defendants to pay their equitably allocated share of response costs that

Atlantic Richfield has incurred and will incur in the future to implement the Removal Action and providing such other relief as the Court determines is appropriate.  To date, Atlantic Richfield has incurred response costs exceeding $60 million.

## THE PARTIES

6.	Plaintiff Atlantic Richfield is a Delaware corporation with its principal place of business at 501 Westlake Park Blvd., Houston, Texas, 77079.  In the Unilateral Administrative Order, the EPA alleged that Atlantic Richfield is a successor to prior owners and operators of facilities at the Site including the Rico Argentine Mining Company.

7.	Defendant NL is a New Jersey corporation with its principal place of business at Three Lincoln Center, 5430 LBJ Freeway, Suite 1700, Dallas, Texas, 75240.  NL is a successor to prior owners and operators of facilities at the Site including the Rico Mining and Reduction Company ("RMRC") and the St. Louis Smelting and Refining Co. ("St. Louis").[1]

8.	RMRC conducted mining operations at facilities addressed by the Removal Action commencing in 1925.  In 1927, St. Louis acquired all of RMRC's assets and liabilities and continued to conduct mining operations at facilities addressed by the Removal Action for the next two decades.

9.	St. Louis was, in 1927 and thereafter, a wholly owned subsidiary of the National Lead Company.  In December 1948, St. Louis was voluntarily dissolved.  Its assets, property,

---

[1] References in this Complaint to RMRC and St. Louis include the NL Defendants unless the context requires otherwise.

-3-

debts, obligations, and liabilities were distributed to and expressly assumed by National Lead Company.  In 1971, National Lead Company changed its name to NL Industries, Inc.

10.     Defendant NL Environmental is a New Jersey corporation with its principal place of business in Dallas, Texas.  It is a wholly owned subsidiary of Defendant NL.  Defendant NL Environmental has contractually assumed Defendant NL's liabilities for environmental remediation and related costs at sites for which Defendant NL has been named as a potentially responsible party or a defendant.  Upon information and belief, this assumption of liabilities includes liabilities associated with the Site.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action and over the parties pursuant to 42 U.S.C. § 9613(b), 28 U.S.C. § 1331, and 28 U.S.C.§ 2201.

12.     Venue is proper in this judicial district pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in, and a substantial part of the property that is the subject of this action is situated within, this district.

13.     Upon filing, Atlantic Richfield provided a copy of this First Amended Complaint to the Attorney General of the United States and to the Administrator of EPA as required by 42 U.S.C. § 9613(l).

## GENERAL ALLEGATIONS

**I.      Site Background and Ownership History**

14.     The Site is an inactive mining area located in the Upper Dolores River Watershed in the San Juan Mountains in southwest Colorado, 25 miles southwest of the town of

Telluride and just north of the town of Rico. For purposes of this First Amended Complaint, the relevant portions of the Site are a tunnel (known as the St. Louis Tunnel) and connected crosscuts, drifts, raises, and other underground mine workings as well as a series of settling ponds, some of which are back-filled and some of which contain sludge material. The mining operations at issue in this action were conducted in sulfide ore bodies at the Northwest Workings at CHC Hill and at Telescope Mountain and the Argentine Workings at Dolores Mountain.

15. Between 1925 and 1927, RMRC, a predecessor of the NL Defendants, owned and operated various mines in the Northwest Workings including the Pigeon Mine, the Mountain Springs Mine, and the Wellington Mine. It constructed numerous raises and drifts and recovered a substantial amount of ore. RMRC also owned and operated the Argentine Workings and sank a new shaft in those workings.

16. Another predecessor of the NL Defendants, St. Louis, acquired all of RMRC's assets and liabilities in 1927. St. Louis owned and operated properties in the Northwest Workings formerly owned and operated by RMRC. It constructed numerous cross-cuts, adits, drifts, and raises, including a raise that connected the Wellington Mine and the Mountain Springs Mine. It produced a substantial amount of ore from the Northwest Workings.

17. Between 1930 and 1941, St. Louis constructed the approximately 6000-foot St. Louis Tunnel. Acid mine drainage ("AMD") from extensive hydrologically connected mine workings constructed in the sulfide ore bodies collected in and was transported through the St. Louis Tunnel. The Tunnel drained into the Dolores River watershed. From the time of construction through today, AMD has flowed through and out of the Tunnel and into the Dolores River.

18. In 1936, St. Louis constructed the Northwest Crosscut which connected the St. Louis Tunnel to the Northwest Workings.

19. By 1939, St. Louis had completed construction of the Mountain Springs Raise, a large inclined tunnel that connected the Northwest Crosscut to the Mountain Springs Mine.

20. The Northwest Crosscut and the Mountain Springs Raise allowed AMD to flow from the network of the Northwest Workings into the St. Louis Tunnel, out of the tunnel, and into the Dolores River.

21. By constructing the St. Louis Tunnel, the Northwest Crosscut, and the Mountain Springs Raise, St. Louis created a conveyance for the release, transport, and disposal of AMD from the Northwest Workings.

22. In 1943, St. Louis abandoned and relinquished all its assets at the Site. St. Louis dissolved in 1948. Its assets, property, debts, obligations, and liabilities were distributed to and expressly assumed by National Lead Company, a predecessor to the NL Defendants.

**II.      Response Action**

23. In December 2010, the EPA drafted an Action Memorandum (the "Memo") requesting a removal action at certain locations and facilities at the Site. In the Memo, EPA stated that conditions met the criteria set forth in the National Contingency Plan at 40 C.F.R. § 300.415(b)(2) and thus warranted a removal action. According to the EPA, the objective of the proposed removal action was to "minimize or prevent the on-going release and potential release of hazardous substances (both aqueous and solid waste) being discharged from the St. Louis Tunnel and the associated settling ponds into the Dolores River and surrounding wetlands." To meet the objectives for the proposed removal action, EPA required: (1) the removal of precipitate

sludge from the settlement ponds and (2) the development of a water management system for the St. Louis Tunnel discharge.

24. Pursuant to its authority under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), EPA issued the UAO on March 23, 2011, requiring Atlantic Richfield to perform the Removal Action and set forth a detailed UAO Work Plan with a completion schedule.

25. On December 6, 2021, Atlantic Richfield and EPA entered into the AOC, requiring Atlantic Richfield to continue to perform the Removal Action and setting forth a detailed AOC Work Plan with a completion schedule.

26. The UAO and AOC Work Plans require treatment of AMD discharging from the St. Louis Tunnel and the extensive networks of the Northwest Workings and the Argentine Workings. They require that Atlantic Richfield, among other things, provide for water quality monitoring, solids management, design and construction of a solids repository, hydraulic control measures for the now collapsed St. Louis Tunnel, source water investigation and controls, water treatment system analysis and design, and construction, operation, and monitoring of the full-scale water treatment system to remove hazardous substances from the St. Louis Tunnel discharge.

27. The AOC also requires Atlantic Richfield to reimburse EPA for certain past response costs as well as future response costs incurred by EPA.

28. Since March 2011, Atlantic Richfield has made substantial progress implementing the required response actions as outlined in the UAO and AOC Work Plans at a cost exceeding $63.7 million dollars. Completed and on-going tasks include:

    a) Ongoing monitoring of surface water and groundwater quality, flow, and water levels at an extensive network of sampling locations;

b) Excavation and removal of solids from the upper settling ponds and placement in a constructed interim drying facility, and construction of a permanent solids repository in accordance with Colorado Department of Public Health and Environment solid waste disposal regulations;

c) Conducting treatability studies, geotechnical surveys, geochemical characterization, and other underground investigations aimed at characterizing and identifying potential control methods for the sources of water flows and contaminants discharging from the St. Louis Tunnel;

d) Installation of relief wells, a flow control structure, and other hydraulic controls above and below the collapsed portion of the St. Louis Tunnel and adit portal to reduce the risk of an uncontrolled AMD release;

e) Analyze and upgrade stability of settling pond berms and embankments; and

f) Preliminary assessment of treatment system alternatives and construction and operation of pilot-scale and demonstration-scale engineered wetland treatment systems for treatment of the St. Louis Tunnel discharge.

29. Additional work remains to be done including the final selection of the preferred treatment technology, final design and construction of the full-scale water treatment facility, and long-term operation and maintenance of the system. Future response costs will be substantial.

30. All work has been performed pursuant to the UAO and AOC, consistent with the National Contingency Plan, 40 C.F.R. Part 300, and in accordance with work plans submitted to and approved by EPA.

31. The NL Defendants have not participated in, or paid any response costs for, the Removal Action required by the UAO and AOC.

### III. Origins of the AMD Requiring Treatment

32. The AMD discharging from the St. Louis Tunnel derives primarily from two areas of hydraulically connected mine workings in the sulfide ore bodies, *i.e.*, the Northwest Workings in CHC Hill and Telescope Mountain, connected to the St. Louis Tunnel via the

Northwest Crosscut and the Mountain Springs Raise, and the Argentine Workings in Dolores Mountain, connected via the Southeast Crosscut.

33.     By constructing the St. Louis Tunnel and connecting it via the Northwest Crosscut and the Mountain Springs Raise to the Northwest Workings, St. Louis, the NL Defendants' predecessor, created the drainage pathway for AMD originating from those workings.

34.     AMD flowing from the Northwest Workings and entering the St. Louis Tunnel via the Northwest Crosscut and the Mountain Springs Raise contributes a substantial portion of the water flow and a majority of the zinc, cadmium, manganese, and other metals discharging from the St. Louis Tunnel and requiring treatment under the UAO.

35.     Additional water flow and metals load to the St. Louis Tunnel originates in the Argentine Workings where NL Defendants' predecessors also conducted mining operations.

36.     The metals load dictates the water treatment required under the UAO.  The costs Atlantic Richfield is incurring to perform the required Removal Action are proportional to the metals load in the water.

**FIRST CLAIM FOR RELIEF**
**(Contribution  Pursuant to CERCLA § 113(f))**

37.     Atlantic Richfield re-alleges and incorporates every allegation in the preceding paragraphs as though set forth fully herein.

38.     Under CERCLA section 113(f)(3)(B), any person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such an action in an administrative settlement may seek contribution from any other person

who is potentially liable under CERCLA section 107(a) and has not settled its liability to the United States or a State for the same response action or costs.

39. CERCLA section 107(a) imposes liability upon any person who:

a. currently owns or operates a facility where hazardous substances have been disposed of, 42 U.S.C. § 9607(a)(1);

b. at the time of disposal of any hazardous substance owned or operated any facility where such hazardous substance was disposed of, 42 U.S.C. § 9607(a)(2);

c. by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, 42 U.S.C. § 9607(a)(3); or

d. accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, 42 U.S.C. § 9607(a)(4).

40. Each of the NL Defendants is a "person" within the meaning of section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

41. The St. Louis Tunnel, the settling ponds at its mouth, and the underground workings connected to the St. Louis Tunnel, including the Northwest Workings, the Argentine Workings, the Northwest Crosscut, and the Mountain Springs Raise, are each a "facility" within the meaning of CERCLA section 101(9), 42 U.S.C. § 9601(9) because each is a "site or area

where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located."

42. "Hazardous substances" within the meaning of CERCLA section 101(14), 42 U.S.C. § 9601(14), were "released" within the meaning of section 101(22) of CERCLA, 42 U.S.C. § 9601(22) at each of the St Louis Tunnel, the settling ponds at its mouth, and the underground workings connected to the St. Louis Tunnel, including the Northwest Workings, the Argentine Workings, the Northwest Crosscut, and the Mountain Springs Raise.

43. Each of the NL Defendants' predecessors, RMRC and St. Louis, was an "owner" and/or "operator" of a facility at the time of disposal of hazardous substances at that facility, within the meaning of sections 107(a)(2) and 101(20) of CERCLA, 42 U.S.C. §§ 9607(a)(2), 9601(20).

44. Each of the NL Defendants' predecessors, RMRC and St. Louis, "arranged for disposal" of hazardous substances at a facility, within the meaning of section 107(a)3) of CERCLA, 42 U.S.C. § 9607(a)(3).

45. Each of the NL Defendants' predecessors, RMRC and St. Louis, "transported for disposal" hazardous substances at a facility, within the meaning of section 107(a)4) of CERCLA, 42 U.S.C. § 9607(a)(4).

46. The NL Defendants are liable for the CERCLA liabilities of their predecessors.

47. Pursuant to the AOC, Atlantic Richfield resolved its liability to the United States for the Removal Action within the meaning of 42 U.S.C. § 9613(f)(2) and 42 U.S.C. § 9622(b)(4).

48. Beginning in 2011, Atlantic Richfield has incurred, and will continue to incur in the future, necessary "response" costs as defined by CERCLA section 101(25), 42 U.S.C. § 9601(25), to implement the Removal Action required by the UAO and the AOC in a manner consistent with the requirements of the National Contingency Plan, 40 C.F.R., Part 300 *et seq*.

49. Under 42 U.S.C. § 9613(f)(3)(B), Atlantic Richfield is entitled to seek contribution from the NL Defendants for their equitably allocated portion of response costs incurred or to be incurred by Atlantic Richfield to perform the Removal Action and comply with the UAO and the AOC.

50. The NL Defendants are liable to Atlantic Richfield under CERCLA section 113(f), 42 U.S.C. § 9613(f), for their equitably allocated share of the response costs incurred by Atlantic Richfield to implement the Removal Action required by the UAO and the AOC at the St. Louis Tunnel, the settling ponds at its mouth, and the underground workings connected to the St. Louis Tunnel, including the Northwest Workings, the Argentine Workings, the Northwest Crosscut, and the Mountain Springs Raise.

**SECOND CLAIM FOR RELIEF**
**(Declaratory Relief under CERCLA Section 113(g)(2) and 28 U.S.C. § 2201)**

51. Atlantic Richfield re-alleges and incorporates every allegation in the preceding paragraphs as though set forth fully herein.

52. An actual and substantial controversy, within the meaning of 28 U.S.C. § 2201, currently exists between Atlantic Richfield and the NL Defendants with respect to the NL Defendants' responsibility for past, present, and future response costs and other related costs that have arisen and may yet arise from the alleged presence of hazardous substances at the St. Louis Tunnel, the settling ponds at its mouth, and the underground workings connected to the St. Louis

Tunnel, including the Northwest Workings, the Argentine Workings, the Northwest Crosscut, and the Mountain Springs Raise, and the implementation of the Removal Action required by the UAO and the AOC.  Such costs and expenses are neither remote nor speculative.

53. Absent a judicial declaration setting forth the parties' rights, duties, and obligations with respect to such costs, multiple legal actions may result.

54. Pursuant to CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2), the Court is authorized to enter a declaratory judgment on liability for past, present, and future response costs to be incurred by Atlantic Richfield.

55. Therefore, Atlantic Richfield requests a judicial determination of the rights, duties, and obligations of the parties to this action with respect to the past, present, and future response costs and other related costs that are the subject of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Atlantic Richfield respectfully requests that the Court enter judgment as follows:

a. Enter judgment requiring the NL Defendants to pay Atlantic Richfield their equitably allocated share of the response costs Atlantic Richfield has incurred or will incur to implement the Removal Action required by the UAO and the AOC at the St. Louis Tunnel, the settling ponds at its mouth, and the underground workings connected to the St. Louis Tunnel, including the Northwest Workings, the Argentine Workings, the Northwest Crosscut, and the Mountain Springs Raise;

b. Enter a declaratory judgment, pursuant to section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and 28 U.S.C. § 2201, holding the NL Defendants liable for their

equitably allocated share of past, present, and future response costs to implement the Removal Action required by the UAO and the AOC at the St. Louis Tunnel, the settling ponds at its mouth, and the underground workings connected to the St. Louis Tunnel, including the Northwest Workings, the Argentine Workings, the Northwest Crosscut, and the Mountain Springs Raise;

        c.      Award Atlantic Richfield its litigation costs, including its reasonable attorneys' fees and costs, expert witness fees, and all related expenses;

        d.      Award Atlantic Richfield pre- and post-judgment interest; and

        e.      Award Atlantic Richfield such other and further relief as the Court deems just and equitable.

Dated: December 15th, 2021

                Respectfully submitted,

                *s/ R. Kirk Mueller*
                R. Kirk Mueller

                *s/ Gail L. Wurtzler*
                Gail L. Wurtzler

                DAVIS GRAHAM & STUBBS LLP
                1550 17th Street, Suite 500
                Denver, Colorado 80202
                Telephone: 303-892-9400
                Facsimile: 303-893-1379
                Email: kirk.mueller@dgslaw.com
                      gail.wurtzler@dgslaw.com

                *Attorneys for Plaintiff Atlantic Richfield Company.*

Plaintiff's Address:
501 Westlake Park Blvd.
Houston, TX 77079