IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00234-RMR-KLM

| | |
|---|---|
| ATLANTIC RICHFIELD COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NL INDUSTRIES, INC. and NL ENVIRON-<br>MENTAL MANAGEMENT SERVICES, | ) ) ) |
| | ) |
| Defendants, Counterclaimants, and<br>Third-Party Plaintiffs, | ) ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Third-Party Defendants. | ) |

**NL INDUSTRIES, INC. AND NL ENVIRONMENTAL MANAGEMENT SERVICES'
OPPOSITION TO THIRD-PARTY DEFENDANT REDPATH USA CORPORATION'S
MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT**

In its Motion to Dismiss/Motion for Summary Judgment seeking dismissal of NL Industries, Inc. and NL Environmental Management Services' (collectively, "NL") Second Amended Third-Party Complaint, Redpath USA Corporation fka J.S. Redpath Corporation ("Redpath") contends that NL's claims against Redpath should be dismissed because NL has failed to properly allege that Redpath was an "operator" under CERCLA. Alternatively, Redpath claims that summary judgment should be granted.

Atlantic Richfield Company's ("ARCO") Complaint against NL is ultimately very simple. It alleges that NL's alleged predecessors <u>excavated</u> underground rock within the ARCO Site and that this excavation exposed other underground rock to air and water. ARCO alleges

1

that this exposure has caused acidic water to drain out of a tunnel. That is the extent of the conduct alleged against NL. NL has denied all liability to ARCO because, among other things, NL's alleged predecessors never "disposed" of anything at the ARCO Site, nor was there "disposal" during NL's alleged predecessors' alleged time period of operation or ownership. Nevertheless, ARCO seeks to hold NL liable for more than $70 million based on the fact that NL's alleged predecessors once performed excavations at the Site. NL respectfully submits that based on ARCO's claims, NL does not have liability. But if undertaking excavation at a site is enough to create CERCLA operator or owner liability, as ARCO alleges as to NL, Redpath is liable too.

To the extent that NL can be an "operator" based on excavation within a mine, NL has properly alleged Redpath's "operator" status in detail too, as follows:

> 40. Third-Party Defendant Redpath is an Arizona corporation which is the corporate successor to J.S. Redpath Corporation via Articles of Amendment filed on December 10, 2018 wherein J.S. Redpath Corporation changed its name to Redpath USA Corporation. Redpath USA Corporation is part of Redpath Mining Contractors and Engineers, headquartered in North Bay Ontario, which is a provider of mine contracting worldwide. Redpath USA Corporation's predecessor, J.S. Redpath Construction Company (J.S. Redpath Corporation), constructed various drill stations at the ARCO Site in the 1980s and is responsible as an operator at the ARCO Site, upon information and belief, at the time of disposal of hazardous substances.
>
> 41. J.S. Redpath Corporation filed the Redpath Mine Operator Report for the Year 1981 with the State of Colorado Division of Mines stating that Redpath was an "operator" at the ARCO Site. *See* State of Colorado Division of Mines Metal & Non-Metal Mine Operators Report for the Year 1981 filed by Redpath and obtained from State of Colorado records attached hereto as Exhibit A. Thus, Redpath is an operator.[1]
>
> 42. As set forth in a "Technical Report on a Mineral Property Pursuant to National Instrument 43-101 of the Canadian Securities Administrators", obtained from Outlook Resources, Inc.'s website at http://www.outlookres.com/Files/Minerals/tech_report.pdf,:

---

[1] NL does not admit in any way that it was an operator at the ARCO Site or that it has any liability for the ARCO Site.

> **Rehabilitation of the Blaine mine** was started in September 1981, to facilitate underground drilling on a year round basis and **to reach areas not readily accessible from surface**. The rehabilitation of underground workings, including the **construction of various drill stations was performed by J.S. Redpath Construction Company**. Rehabilitation was also intended to permit mapping and sampling of areas previously inaccessible.

> (emphasis added).  *See* Technical Report on a Mineral Property Pursuant to National Instrument 43-101 of the Canadian Securities Administrators" dated October 31, 2007 obtained from Outlook Resources, Inc.'s website attached hereto as Exhibit B.  The full document can be found at http://www.outlookres.com/Files/Minerals/tech_report.pdf.

> 43.   Redpath admits it performed work in the area it refers to as the Blaine Adit. *See* Docket 96, Redpath's Motion to Dismiss, p. 5 and Docket 96-1, Hansman Declaration ¶ 2 stating: "However, **Redpath** actually **performed** only minimal **construction work** exclusively at the Blaine Adit for a few months in **late 1981/early 1982** for Anaconda – a predecessor of ARCO."

> 44.   Redpath also admits that the Blaine Adit is "a part" of the "Argentine Workings."   *See* Hansman Declaration ¶ 3: "**Redpath's** only **construction** work remotely **located** near the **Rico-Argentine Mine** was the 1981/1982 work performed at the Blaine Adit." (emphasis added); *see also* Motion, p. 11: "ARCO's complaint alleges that the Northwest Workings and **the Argentine Workings (of which the Blaine Adit is a part)** contribute to the hazardous substances needing to be remediated pursuant to the EPA's unilateral administrative order." (emphasis added).

*See* NL Second Amended Third-Party Complaint [ECF 172, at pages 26 - 28.]  Nothing more is required of NL.  To the extent that NL can be an "operator", NL has properly alleged that Redpath too was an operator at the ARCO Site.  These allegations are more than enough.

While Motions to Dismiss are neither the time nor the place to decide facts, Redpath does not dispute that: 1) it "constructed various drill stations at the ARCO Site in late 1981 – early 1982" (*see* Redpath Motion [ECF 189 at page 3]; 2) it conducted "drift clean-up and rehabilitation" [*Id.*]; 3) it installed "water piping" in the ARCO Site [*Id.* at page 4]; 4) it filed a "Metal & Non-Metal Mine Operators Report" with the State of Colorado Division of Mines [*Id.* at page 5]; and 5) its activities "necessarily require[d] **underground excavation**" [*Id.* at page 9].

3

Indeed, as the Metal & Non-Metal Mine Operators Report for the Year 1981 with the State of Colorado Division of Mines 1981 (hereinafter the "Redpath Mine Operator Report")[2] makes clear: 1) Redpath was the "**operator**" of the mine; 2) Redpath operated underground for 91 days; and 3) Redpath worked 1,820 manshifts of 8 hours each for a total of **7,284 hours**. Redpath's own Mine Operator Report filed with the Colorado Division of Mines, which is incorporated as Exhibit A to the Second Amended Third-Party Complaint, states that Redpath was an "operator", and describes the activities it conducted. These allegations are more than enough.

Oppositions to Motions to Dismiss are not the place to: 1) determine facts; 2) submit affidavits that contradict facts set forth in the Complaint; or 3) make statements that are just incorrect. By doing so, as Redpath essentially concedes, Redpath has really made a Motion for Summary Judgment without affording NL any discovery. Redpath's Motion has no merit, either under Rule 12(b)(6) or under Rule 12(d). NL has properly pled its contribution claim under Section 113 of the Comprehensive Environmental Response, Compensation and Liability Act, ("CERCLA"), 42 U.S.C. § 9613. If the Court converts the Motion to one brought under Rule 56, NL should first be allowed to take discovery of Redpath including a deposition of David Hansman. A Rule 56(d) Declaration from John Powers, is attached hereto.

**THE MOTION TO DISMISS STANDARD**

A "court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start*, *Inc*., 336 F.3d 1194, 1201(10th Cir. 2003) (internal quotation marks omitted).

---

[2] A true and correct copy of the Redpath Mine Operator Report obtained from State of Colorado records is attached to the Second Amended Third-Party Complaint as Exhibit A [ECF 172].

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *The Ridge at Red Hawk*, *L.L.C. v. James C. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007). Thus, in ruling on a motion to dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint.").

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id*. (quoting *Twombly*, 550 U.S. at 556).

### THE DECLARATION OF DAVID HANSMAN SUBMITTED BY REDPATH, MAKES REDPATH'S MOTION, A MOTION FOR SUMMARY JUDGMENT WHERE NO DISCOVERY HAS BEEN TAKEN.

Redpath has submitted the Declaration of David Hansman in support of its Motion. As discussed in *Carbajal v. Keefer*, Civil Action No. 12-cv-03231-PAB-KLM, at *3-4 (D. Colo. Apr. 27, 2016):

> However, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see also Reid v. United States*, 626 F. App'x 766, 768 (10th Cir. 2015). Here, the parties have submitted a variety of exhibits in connection with the briefing on the exhaustion issue. *See generally Motion* [#256]; *Response* [#278]; *Reply* [#282].

5

Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, the Court may consider documents outside of the complaint on a motion to dismiss in three instances. First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in his complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). None of these exceptions apply to the exhibits provided by the parties.

Here, as in *Carbajal v. Keefer*, none of the exceptions allow Redpath to submit or rely upon the Declaration of David Hansman.

Redpath's Motion:

    1) is not one made under Rule 12(b)(1);

    2) does not seek judicial notice; and

    3) does not refer to documents referenced by NL in its Complaint.

The Declaration should be stricken because it is not proper under Rule 12(b)(6).

Moreover, the Declaration of David Hansman does not explain how he has knowledge of what allegedly happened at the ARCO Site in 1981. He does not state that he was working for ARCO in 1981 or working anywhere in Colorado. He states that his knowledge is based on "a review of the documents". But he does not indicate what documents he considered, and they have not been produced or attached by Redpath. Regardless, as Redpath itself agrees, if the Declaration is considered, Redpath's Motion should be deemed to be converted to a motion for summary judgment with NL having full rights to take discovery first. *Osei v. Brooks*, Civil Action No. 11-cv-01135-PAB-KMT, at *9 (D. Colo. Mar. 30, 2012) ("*See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to

6

and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").") NL requests such discovery.

## ARGUMENT

## POINT I

### TO THE EXTENT THAT NL CAN BE AN OWNER OR OPERATOR BASED ON ITS ALLEGED PREDECESSOR'S EXCAVATION, NL HAS PROPERLY ALLEGED THAT REDPATH IS AN OPERATOR UNDER CERCLA AND HAS PROVIDED THE FACTUAL BASIS FOR ITS CLAIM.

As noted above, Redpath filed the Redpath Mine Operator Report for the Year 1981 with the State of Colorado Division of Mines, which is incorporated into the Second Amended Third-Party Complaint, and which stated that Redpath was an "operator" at the ARCO Site. That alone should be enough. Furthermore, NL has provided detailed allegations showing why, if NL can be an operator, Redpath is one too.[3]

More specifically, NL has alleged that Redpath "constructed various drill stations at the ARCO Site in the 1980s … at the time of disposal of hazardous substances." *See* Second Amended Third-Party Complaint at ¶ 40. The Redpath Mine Operator Report for the Year 1981 with the State of Colorado Division of Mines states that Redpath was an "operator" at the ARCO Site. *See* Second Amended Third-Party Complaint at ¶ 40. NL's allegations include Redpath's prior admission that "it performed work in the area it refers to as the Blaine Adit…in **late 1981/early 1982** for Anaconda – a predecessor of ARCO." *See* Second Amended Third Party Complaint at ¶ 43. NL's allegations also include Redpath's prior admission "that the Blaine Adit is "a part" of the "Argentine Workings" and that "ARCO's complaint alleges that the Northwest Workings and **the Argentine Workings (of which the Blaine Adit is a part)** contribute to the

---

[3] In submitting this Opposition, NL does not admit in any way that it was an operator at the ARCO Site or that it has any liability for the ARCO Site.

7

hazardous substances needing to be remediated pursuant to the EPA's unilateral administrative order." (emphasis added). *See* Second Amended Third-Party Complaint at ¶ 45. Nothing more is required of NL.

NL disputes that it has any liability under CERCLA to ARCO for any of the alleged activities of its alleged predecessor and denies any kind of CERCLA liability. However, in the event NL has liability for activities that occurred prior to 1943, Redpath's activities in the 1980's should be enough for Redpath to have "operator" liability under CERCLA. Regardless, that is not a matter to be decided on a Motion to Dismiss.

To the extent that the new Declaration of David Hansman is considered, and Redpath's Motion is converted to one for summary judgment, this Court should note that even Mr. Hansman admits that the stations for the drills that Redpath built "were located underground and the preparation of those stations **required excavation within the existing drift heading to accommodate the diamond drilling equipment**." *See* ECF 189-1 at page 3.

Yet, Redpath attempts to argue that it has no responsibility for the ARCO Site arguing that the Blaine Adit, where it admits it worked, was allegedly not connected to the St. Louis Tunnels until 1983. Yet again, there is no merit to the *ipse dixit* argument. The true facts are to the exact opposite. As NL has pointed out in its Motion for Summary Judgment, "[i]**n the 1950's**, a crosscut from the Argentine Mine on the Silver Creek to the St. Louis Tunnel on the Dolores River was completed. This caused the water level in the Silver Creek area workings to drop 450 feet, reducing the impact of drainage at the Site, but increasing the flow rate from the St. Louis Tunnel (also herein referred to as the "Adit")." *See* ECF 97-1, Powers Decl. ¶ 12. Ex. 6, EPA December 21, 2010 Action Memorandum – Enforcement excerpts, p. 2. The coffer dam that fully diverted the Argentine Mine drainage to the St. Louis Tunnel was what occurred in 1983, but the connection to the St. Louis Tunnel was already in place in 1981.

8

To the extent NL can be liable to ARCO for excavations, nothing more is required under Tenth Circuit case law.

First, in *Broderick Inv. Co. v. Hartford Acc. Indem*, 954 F.2d 601, 604 n.2 (10th Cir. 1992), in the context of an insurance case involving CERCLA, the Tenth Circuit stated:

> CERCLA identifies the owner or operator of a facility as a party potentially responsible for environmental response costs associated with the cleanup of that facility. 42 U.S.C. § 9607(a)(1). A facility's prior owner or operator may also be held liable if hazardous substances were disposed at the facility during that person's ownership or operation of the facility. 42 U.S.C. § 9607(a)(2).")

Here, whether hazardous substances were disposed of at the ARCO Site during the more than 91 days of Redpath's underground mining operations involving more than 1,820 manshifts of 8 hours each for a total of 7,284 hours, is a question that should not be decided on a motion to dismiss.

Indeed, in *United Steelworkers of Am. v. Oregon Steel*, 322 F.3d 1222, 1229 (10th Cir. 2003), in the context of a Clean Air Act case, the Tenth Circuit cited to the CERCLA case of *CBS, Inc. v. Henkin,* 803 F.Supp. 1426, 1432 (N.D.Ind. 1992), stating that "pleading alleging that defendants 'were owner and operators' of hazardous waste site sufficient to state a claim under CERCLA". Here, NL has far more and has explained exactly what activities Redpath has undertaken including the thousands of hours of underground excavation.

The Tenth Circuit added in *United Steelworkers*:

> The District Court therefore erred in dismissing the claims against Oregon Steel. Although USWA's pleading was general, it was sufficient to meet the minimal requirements of the Federal Rules. This pleading is fair notice to defendants that USWA expects, with the aid of discovery, to pinpoint the specific role that Oregon Steel plays vis-a-vis the Pueblo Mill. At a minimum, the District Court should have allowed USWA to replead its allegations with more specificity. We therefore reverse the District Court's dismissal of the claims against Oregon Steel.")

*United Steelworkers of Am. v. Oregon Steel*, 322 F.3d at 1229. If NL can be liable to ARCO for excavations, NL's pleading against Redpath is sufficient under Tenth Circuit guidance.

Case law within the District of Colorado also supports NL, not Redpath. As is the case here, in *Colo. Dep't of Pub. Health & Env't v. United States*, 381 F. Supp. 3d 1300, 1307-08 (D. Colo. 2019), Shell argued that the Complaint against it did not have enough detail to make it an operator under CERCLA. The District Court rejected that argument as follows:

> Shell's final argument relates to a "factual gap" in the complaint. (ECF No. 47 at 5-6.) Specifically, Shell asserts that the complaint does not "allege that Shell makes decisions specific to Basin F." (*Id.*) Shell is technically correct; however, **the complaint alleges that Shell is an operator of "the Facility,"** which includes Basin F. (ECF No. 1 at ¶¶ 8, 15, 16, 39.) "[W]e accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in that party's favor." *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012). If Shell makes environmental compliance decisions regarding the whole Facility, it is reasonable to infer that such decisions also impact Basin F, which is part of the larger Facility. Accordingly, Shell's first objection is overruled.")

(emphasis added)

Again, Redpath's argument that the mines were not connected is not one to be decided on a motion to dismiss, as issues of CERCLA operator liability are fact intensive involving the totality of circumstances. *See Tosco Corp. v. Koch Industries, Inc.*, 216 F.3d 886, 892 (10th Cir. 2000) (citing "*United States v. Vertac Chem. Corp.*, 46 F.3d 803, 808 (8th Cir. 1994) (determination of operator liability under 42 U.S.C. § 9607(a)(2) is a fact-intensive inquiry requiring consideration of the totality of circumstances), *cert. denied*, 515 U.S. 1158 (1995).")

Finally, courts outside of the Tenth Circuit further support NL.

In *BancorpSouth Bank v. Envtl. Operations, Inc.*, 908 F. Supp. 2d 1016, 1028 (E.D. Mo. 2012), the court found that contractors at a site where hazardous substances were spread as a result of the conduct of contractors created basis for operator liability and stating:

> While discovery may reveal that Plaintiff and Cross–Defendants had no authority to control the handling of the hazardous material on the property, the issue before the Court at this stage is whether the Complaint sufficiently alleges control. Under the standards articulated herein, the Court concludes that the Counterclaim and Cross–Claims meet the *Twombly* and *Iqbal* standards of alleging facts sufficient to place the parties on notice of the CERCLA claim against them.

The only case cited by Redpath is *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 861 F.2d 155 (7th Cir. 1988). There, the Seventh Circuit found that a supplier of wood preserving chemicals who designed and built the contaminated wood processing plant, trained the plant's personnel to operate the machinery and licensed the plant to use its trademark in connection with treated lumber was not an "operator" under CERCLA. Unlike here, there was no evidence that Vulcan Materials ever actually operated at the site at issue, whereas Redpath's own report shows that it did directly operate at the ARCO Site. *Hines* is not remotely on point, and its reasoning supports NL, not Redpath.

Indeed, *Edward Hines Lumber* was subsequently discussed in *Kaiser Aluminum & Chemical Corp. v. Catellus Development Corp.*, 976 F.2d 1338 (9th Cir. 1992) – a case previously cited by Redpath but now abandoned. In *Kaiser Aluminum*, Richmond hired Ferry to excavate and grade a portion of the land for a proposed housing development. While excavating the development site, Ferry spread some of the displaced soil over other parts of the property. This soil contained hazardous chemical compounds, including paint thinner, lead, asbestos, and petroleum hydrocarbons. The Ninth Circuit found that mere excavation and grading was more than enough for Ferry to be considered an "operator" under CERCLA. The Ninth Circuit stated:

> Although the Seventh Circuit affirmed a grant of summary judgment in favor of the contractor, *Hines* does not stand for the proposition that a contractor can *never* be liable as an operator under section 9607(a)(2). On the contrary, it is clear from the court's analysis in *Hines* that the contractor was not liable as an "operator" because, although he designed and built the wood treatment plant, he had no authority to control the day-to-day operation of the plant after it was built; and it was during the operation of the plant that the hazardous materials were released.
>
> We read *Hines* as reiterating the well settled rule that "operator" liability under section 9607(a)(2) only attaches if the defendant had authority to control the cause of the contamination at the time the hazardous substances were released into the environment. *See Nurad, Inc. v. Hooper Sons Co.,* 966 F.2d 837, 842 (4th Cir. 1992) (the authority to control the source of the contamination "is the definition of `operator' that most courts have adopted"); *CPC Int'l, Inc. v. Aerojet-General*

11

*Corp.,* 731 F. Supp. 783, 788 (W.D.Mich. 1989) ("The most commonly adopted yardstick for determining whether a party is an owner-operator under CERCLA is the degree of control that party is able to exert over the activity causing the pollution.").

Unlike *Hines,* the activity which produced the contamination in the present case — the excavation and grading of the development site — occurred *during,* not after, the construction process. We conclude that Catellus's allegations of Ferry's operations on the property tend to show that Ferry had sufficient control over this phase of the development to be an "operator" under section 9607(a)(2).

*Kaiser Aluminum*, 976 F.2d at 1341-42.

Here, even more so than in *Kaiser Aluminum*, Redpath filed the Redpath Mine Operator Report stating that it was the mine "operator." Further, Redpath's activity occurred **after** there were alleged releases from the ARCO Site. As NL has pointed out in its Motion for Summary Judgment, the Colorado Department of Health issued a Notice of Violation and issued a Cease and Desist Order to ARCO in **1980**. *See* ECF 97-1; Powers Decl. ¶ 27. Exh. 15, August 28, 1980 letter from Colorado Department of Health and August 27, 1980 Notice of Violation and Cease and Desist Order. Redpath was operating at the ARCO Site, either at that time, or shortly thereafter. *Kaiser Aluminum* fully supports NL, not Redpath.

## POINT II

## TO THE EXTENT THAT NL HAS NOT PROPERLY ALLEGED THAT REDPATH IS AN OPERATOR UNDER CERCLA, NL REQUESTS THAT IT BE ALLOWED TO REPLEAD ITS CLAIM.

NL submits that it has more than adequately pled its claim, but to the extent that this Court disagrees, NL respectfully requests that it be allowed to replead and correct any alleged deficiencies. *See United Steelworkers of Am. v. Oregon Steel*, 322 F.3d at 1229 ("At a minimum, the District Court should have allowed USWA to replead its allegations with more specificity. We therefore reverse the District Court's dismissal of the claims against Oregon Steel.")

## POINT III

## NL SHOULD BE ALLOWED TO TAKE DISCOVERY OF REDPATH AND ARCO IF REDPATH'S MOTION IS CONVERTED TO A SUMMARY JUDGMENT MOTION.

As set forth in the Declaration of John Powers, if Redpath's Motion is converted to one for summary judgment, NL should be allowed to take discovery of Redpath and ARCO on the issues related to Redpath's Motion.  All of the information that relates to Redpath's Motion, other than the mining report and website that NL was able to locate from public sources, are in the exclusive hands of either Redpath or ARCO.  Moreover, NL does not have access to David Hansman to rebut the allegations contained in his Declaration and requests the right to take his deposition, or other knowledgeable people at Redpath or ARCO.  NL requests, to the extent that the Motion is converted to a summary judgment motion, that any decision on the merits be deferred until after NL has the opportunity to take such discovery, that this Court allow NL to take such discovery, and that the Court provide NL the right to thereafter supplement this response after it obtains this discovery.

## CONCLUSION

For the reasons set forth above, NL requests that Redpath's motion be denied.

June 30, 2022.

/s/ Joel L. Herz
Joel L. Herz
LAW OFFICES OF JOEL L. HERZ
La Paloma Corporate Center
3573 East Sunrise Drive, Suite 215
Tucson, Arizona 85718
Telephone:  520-529-8080

*Attorneys for Defendants/Counter-claimants/Third-Party Plaintiffs NL Industries and NL Environmental Management Services*

13

**CERTIFICATE OF SERVICE**

I certify that on the 30th day of June, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Joel L. Herz