IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00234-NYW-KLM

ATLANTIC RICHFIELD COMPANY,

      Plaintiff,

v.

NL INDUSTRIES, INC., and
NL ENVIRONMENTAL MANAGEMENT SERVICES,

      Defendants and Third-Party Plaintiffs,

v.

UNITED STATES OF AMERICA,
EL PASO REMEDIATION COMPANY, and
REDPATH USA CORPORATION, et. al.,

      Third-Party Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Third-Party Defendant United States of America's (the "United States") **Motion to Dismiss Second Amended Third-Party Complaint [ECF 172]** [#176] (the "United States Motion") and Third-Party Defendant Redpath USA Corporation's ("Redpath") **Motion to Dismiss Second Amended Third-Party Complaint [ECF 172] or, in the Alternative, for Summary Judgment** [#189] (the "Redpath Motion").

      Third-Party Defendant El Paso Remediation Company ("El Paso") filed a Motion to Join and Adopt the United States Motion [#184], which was granted by the Court.  *See Order* [#203] at 2.  Third-Party Plaintiffs NL Industries, Inc. and NL Environmental

Management Services (collectively, "NL") filed a Response [#188-1] in opposition to the United States Motion [#176] (the "United States Response"),[1] and the United States filed a Reply [#192] (the "United States Reply").  El Paso filed a Motion for Leave to File Reply [#193], which was granted by the Court, and a Reply [#193-1] (the "El Paso Reply").  *See Order* [#203] at 2.

NL further filed a Response [#191] in opposition to the Redpath Motion [#189] (the "Redpath Response"), and Redpath filed a Reply [#198] (the "Redpath Reply").

The United States Motion [#176] and the Redpath Motion [#189] have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1. *See* [#185, #190].  The Court has reviewed the Motions, the Responses, the Replies, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the United States Motion [#176] and the Redpath Motion [#189] be **GRANTED**.

## I.  Background[2]

"This case arises out of claims brought by Atlantic Richfield Company ("ARCO") against NL alleging that ARCO has incurred costs and will incur future costs in responding to releases and threatened releases of hazardous substances at certain facilities and locations within the Rico-Argentine Site, near Rico, Dolores County, Colorado (the "ARCO Site")."  *Second Am. Third-Party Compl.* [#172] ¶ 2.

---

[1]  The United States Response [#188-1] was filed as an attachment to a notice of errata following the filing of an original response.  *See Notice of Errata* [#188].

[2]  For the purposes of resolving the United States Motion [#176] and the Redpath Motion [#189], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in NL's Second Amended Third-Party Complaint [#172].  *See Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).

NL is the alleged successor to St. Louis Smelting & Refining Co. and Rico Mining and Reduction Company, which conducted operations at the ARCO Site prior to 1943. *See id.* ¶¶ 7-8.  NL alleges that it has "never owned, operated, or conducted any activities at the ARCO Site."  *Id.* ¶ 6.

El Paso is a successor to "companies that owned property or operated or arranged for the disposal of hazardous substances at the ARCO Site . . . ."  *Id.* ¶ 10.

The Unites States "includes the U.S. Department of the Interior acting through the Bureau of Land Management . . . , the U.S. Department of Agriculture acting through the the U.S. Forest Service . . . , and other current and former departments, agencies, and instrumentalities of the United States government (collectively, the "United States").  *Id.* ¶ 30.  The United States has owned land at the ARCO Site "where there has been a release of hazardous substances and where hazardous substances have come to be located."  *Id.* ¶ 32.

Redpath is a successor to J.S. Redpath Construction Company, which built "various drill stations at the ARCO Site in the 1980s."  *Id.* ¶ 40.   NL alleges that Redpath "is responsible as an operator at the ARCO Site . . . at the time of disposal of hazardous substances."  *Id.*

In response to the release of hazardous substances within the ARCO Site, the Environmental Protection Agency (the "EPA") issued a Unilateral Administrative Order (the "UAO") effective March 23, 2011, against ARCO.  *See id.* ¶¶ 2, 48, 88.  Following this order, ARCO brought a civil action against NL pursuant to the Comprehensive Environmental, Response, Compensation and Liability Act ("CERCLA") § 107(a), 42 U.S.C. § 9607(a) ("Section 107(a)").  *Id.* ¶ 90.  ARCO's civil action against NL seeks to

recover "unreimbursed costs that ARCO has incurred or will incur in response to releases or threatened release[s] of hazardous substances at the ARCO Site" on the basis of NL being a potentially responsible party ("PRP").  *Id.*  After initiating this action, ARCO entered into an Administrative Settlement Agreement and Order on Consent for Removal Action (the "AOC") with the EPA, resolving ARCO's liability with the United States relating to the ARCO Site as imposed by the UAO.  *See generally AOC* [#152-1].[3]  Afterwards, the Court granted ARCO leave to file an amended complaint that dismissed ARCO's Section 107(a) claim and replaced it with a contribution claim made pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f) ("Section 113(f)").  *See Recommendation* [#164] at 12; *Order* [#170] at 4 (accepting and adopting the Recommendation [#164]).

In the Second Amended Third-Party Complaint [#172], NL asserts two claims against the United States, El Paso, and Redpath (collectively, the "Third-Party Defendants"): (1) contribution pursuant to Section 113(f) if NL is held liable to ARCO; and (2) declaratory relief pursuant to CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2) ("Section 113(g)") and 28 U.S.C. § 2201 stating that if NL is found to be liable to ARCO, the Third-Party Defendants are liable for contribution for their equitable share of future response costs or damages.  *Id.* ¶¶ 62-106.  The Third-Party Defendants seek dismissal of the Second Amended Third-Party Complaint [#172] for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  *United States Motion* [#176] at

---

[3] "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment.  This allows the court to 'take judicial notice of its own files and records, as well as facts which are a matter of public record.'"  *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (internal citations omitted).  Therefore, the Court takes judicial notice of previously docketed records in this action such as the AOC [#152-1], and considers these records for the purposes of adjudicating the present United States Motion [#176] and Redpath Motion [#189].

1; *Redpath Motion* [#189] at 2.  In the event that the Court considers matters outside of the pleadings, Redpath further moves for entry of summary judgment in its favor regarding NL's claims against Redpath.  *Redpath Motion* [#189] at 2.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted. . . .").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor

does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that [a] defendant has acted unlawfully." *Id.* (citation omitted). To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] . . . that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (citation and internal quotation marks omitted).

## III.  Analysis

### A.    Whether NL Sufficiently States a Contribution Claim

The United States and El Paso argue that "NL[ ] has failed to meet CERCLA's statutory prerequisites for its third-party contribution claim." *United States Motion* [#176] at 6. The United States and El Paso further argue that NL "has no claim for contribution as a matter of common law because, as a contribution defendant, NL Industries is potentially liable only for its equitable share." *Id.* at 8. Redpath argues that NL has not "pled facts sufficient to establish that Redpath, at the time of disposal of any hazardous

substance, *operated a facility at which hazardous substances were disposed of.*"
*Redpath Motion* [#189] at 8 (emphasis in original) (citing 42 U.S.C. § 9607(a)).   In
contrast, NL argues that it "has met all conditions necessary to assert a CERCLA" Section
107(a) claim because NL was once sued under Section 107(a) in the underlying litigation
to the present action.  *United States Response* [#188-1] at 8.  NL further argues that
"unlike . . . a common law contribution claim, an excessive liability finding is not a
predicate to making a CERCLA § 113 claim[,]" *United States Response* [#188-1] at 8
(citation omitted),[4] and that "if undertaking excavation at a site is enough to create
CERCLA operator or owner liability, as ARCO alleges as to NL, Redpath is liable too[,]"
*Redpath Response* [#191] at 2.

The Court finds the United States and El Paso's arguments regarding the common
law application of CERCLA to be dispositive of both the United States Motion [#176] and
the Redpath Motion [#189] and therefore limits its analysis to this issue.  Thus, the Court
turns to the common law application of CERCLA in the Tenth Circuit.

### 1.    Legal Framework for the Common Law Application of CERCLA

"Contribution is a statutory or common law right available to those who have paid
more than their equitable share of a common liability."  *Cnty. Line Inv. Co. v. Tinney*, 933

---

[4] NL further argues that it "has not made, and is not presently making, any common law claims.
NL's claims are solely statutory." *United States Response* [#188-1] at 8.  The Court rejects this
argument because the United States does not assert that NL is making common law claims—the
United States' arguments regarding the common law instead relate to the *application* of CERCLA.
*See United States Reply* [#192] at 5 ("Court decisions interpreting and applying Section 113(f)
are by definition 'common law.'  Moreover, the Supreme Court has explicitly referred to and relied
upon the common law of contribution when interpreting CERCLA's contribution provisions.")
(citing *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 137-141 (2007)).  The Court further rejects
NL's argument that "under common law, NL would still have a contribution claim." *United States
Response* [#188-1] at 10 (citing *Graber v. Westaway*, 809 P.2d 1126, 1128-29 (Colo. App. 1991)
(describing contribution liability under Colorado tort law)).  In the present case, each of NL's claims
are made under *federal* law, and are not subject to the application of *Colorado* common law.  *See
generally Second Am. Third-Party Compl.* [#172].

F.2d 1508, 1515 (10th Cir. 1991) (citation omitted).  The Supreme Court has defined contribution as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault."  *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 138 (2007) (quoting Black's Law Dictionary 353 (8th ed. 2004)).  The Supreme Court has explained that in the context of CERCLA:

> Nothing in § 113(f) suggests that Congress used the term "contribution" in anything other than this traditional sense.  The statute authorizes a PRP to seek contribution "during or following" a suit under § 106 or § 107(a). . . .  Thus, § 113(f)(1) permits suit before or after the establishment of common liability.  In either case, a PRP's right to contribution under § 113(f)(1) is *contingent upon an inequitable distribution of common liability among liable parties.*

*Id.* at 138-39 (emphasis added; internal citation omitted); *see also* H.R. Rep. No. 99-253(III), at 19 (1985), *reprinted in* 1986 U.S.C.C.A.N. 3038, 3042 ("Contribution is a statutory or comon [sic] law right available to those who have paid more than their equitable share of an entire liability.").

Therefore, a party's Section 113(f) contribution liability is for several liability.  *See Atl. Rsch.*, 551 U.S. at 138-39; *Sun Co., Inc. (R&M) v. Browning-Ferris, Inc.*, 124 F.3d 1187, 1193 (10th Cir. 1997) ("[U]nder § 113(f), that liability will be several, and the total cleanup costs—including responsibility for 'orphan shares'[5]—will be equitably apportioned among all the PRPs . . . ."); *Liability*, Black's Law Dictionary (11th ed. 2019) (defining several liability as "[l]iability that is separate and distinct from another's liability, so that the plaintiff may bring a separate action against one defendant without joining the

---

[5] "'Orphan shares' are those shares of the waste responsibility which are attributable to PRPs who either are insolvent or cannot be located or identified."  *Sun Co.*, 124 F.3d at 1193 n.4 (citation omitted).

other liable parties").  With this in mind, the Court turns to whether Count I of the Second Amended Third-Party Complaint [#172], "[c]ontribution under CERCLA § 113(f)[,]" is precluded by the common law application of Section 113(f).

### 2.    Whether NL's Contribution Claim Is Precluded

The Court agrees with the United States that NL "does not have a basis to seek contribution . . . under Section 113(f) in this case."  *United States Reply* [#192] at 10.  As the United States points out, if NL is found to be liable in ARCO's action asserting a Section 113(f) claim against NL, "the Court would then equitably allocate the response costs among the liable parties."  *Id.* at 8 (citing 42 U.S.C. § 9613(f)(1)); *Sun Co.*, 124 F.3d at 1193 (establishing that liability under Section 113(f) is several); *see generally Am. Compl.* [#171] (asserting claims against NL exclusively under Section 113(f), Section 113(g), and 28 U.S.C. § 2201).   Therefore, NL has not shown that it has a "right to contribution under § 113(f)(1)" based on "an inequitable distribution of common liability among liable parties."  *Atl. Rsch. Corp.*, 551 U.S. at 139.

The Court finds an example used by the United States District Court for the Eastern District of California in *City of Merced v. Fields*, 997 F. Supp. 1326, 1332-33 (E.D. Cal. 1998), to be persuasive in explaining why contribution claims must be dismissed in the absence of inequitable liability:

> The court will dismiss the Opposition's claims as to the City Response Costs based on the following reasoning. . . .  Defendants in a contribution action are liable for no more than their several, equitable share of clean costs. . . . Only one who has incurred more than its fair-and-several share of cleanup liability may maintain an action for contribution.  *See United Tech*[*s.*] *Corp. v. Browning-Ferris Indus*[*.*]*, Inc.*, 33 F.3d 96, 103 (1st Cir. 1994). Therefore, as a matter of logic, contribution defendants, as well as the parties brought in by the contribution defendants, who can by definition owe to contribution plaintiffs no more than their fair-and-several share of cleanup liability, cannot themselves maintain contribution actions of their own.

Because this argument is fairly abstract, the court provides examples to illustrate the point. . . .

Example 3: To forestall a suit by the Government, PRP X voluntarily begins cleanup of Site and incurs costs greater than X's equitable share. X, being a PRP, brings a contribution action against Y and Z. Y and Z, being contribution defendants, are not liable to X for more than their fair-and-several share of the cleanup costs. Y and Z therefore cannot bring contribution actions against A, B, or C. . . .

In the present litigation, the Court finds NL's position to be sufficiently analogous to that of "Y and Z." *See id.* at 1333; *see also Tronox Worldwide LLC v. Union Oil Co. of Cal.*, No. CIV-07-1017-HE, 2012 WL 1493733, at *2 (W.D. Okla. Apr. 27, 2012) ("Courts generally hold that § 113(f) contribution-defendants cannot assert their own contribution claims against others because such defendants are only liable for their fair share of response costs in the first place.") (citations omitted).

However, NL argues that "an excessive liability finding is not a predicate to making a CERCLA § 113 claim." *United States Response* [#188-1] at 8 (citing *United States v. Albert Inv. Co., Inc.*, 585 F.3d 1386, 1397 (10th Cir. 2009); *United States v. Union Elec. Co.*, 64 F.3d 1152, 1167 (8th Cir. 1995)). The Court notes that in both cases cited by NL, parties sought contribution under Section 113(f) while facing *active* claims made under Section 107(a). *See id.*; *Albert Inv. Co.*, 585 F.3d at 1389; *Union Elec. Co.*, 64 F.3d at 1155-56. In contrast, NL currently faces no claim made under Section 107(a). *See Recommendation* [#164] at 12; *Order* [#170] at 4; *see generally Am. Compl.* [#171]. The Court recognizes that ARCO's Section 107(a) claim against NL—which could have led to *potentially* inequitable "strict, joint and several liability" for NL, *Sun Co.*, 124 F.3d at 1190—was dismissed without prejudice, s*ee Recommendation* [#164] at 12. However, the Court does not find a previously dismissed Section 107(a) claim to be relevant to the

present litigation.  *Cf. id.* ("Defendants' assertion that they could 'potentially be subjected to these same stale claims, again at some future date,' is pure speculation.").[6]  The Court declines to base its analysis here on "speculation."

Therefore, in order to assert contribution claims pursuant to Section 113(f), NL must carry the burden of showing that it faces "an inequitable distribution of common liability among liable parties."  *See Atl. Rsch. Corp.*, 551 U.S. at 139; *Bd. of Cnty. Comm'rs of La Plata, Colo. v. Brown Grp. Retail, Inc.*, 768 F. Supp. 2d 1092, 1120 (D. Colo. 2011) (stating that under Section 113(f), a plaintiff must prove that "it would be inequitable to require it to pay the total amount of recoverable costs") (citation omitted).

NL appears to argue that it is subject to an inequitable share of its liability because ARCO has not asserted CERCLA claims against any other solvent PRP, and that "[to the extent [NL] is found liable for any 'orphan share[,]'[ ] it will bear more than its 'several' share of liability."  *United States Response* [#188-1] at 3-4, 14.  The Court first notes that it is not aware of any requirement that CERCLA claims must be made against *all* solvent PRPs.  *See* 42 U.S.C. § 9613(f)(1) ("Any person *may* seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title . . . .") (emphasis added).  The Court further notes that any "orphan share" liability applied to NL will be

---

[6]  In deciding not to consider the previously dismissed Section 107(a) claim against NL, the Court recognizes that the Tenth Circuit has stated that "[u]nder CERCLA, a plaintiff who has been held responsible for cleanup costs can seek contribution from a defendant if the defendant *could* have been held responsible for some of those cleanup costs in the first place."  *Cyprus Amax Mins. Co. v. TCI Pac. Commc'ns, LLC*, 28 F.4th 996, 1012 (10th Cir. 2022) (emphasis added; citation omitted).  However, the Court does not find this statement to be inconsistent with that of the Supreme Court explaining that CERCLA contribution is available only in the face of inequitable liability.  *See Atl. Rsch.*, 551 U.S. at 139.  The Court's decision not to address the previously dismissed Section 107(a) claim against ARCO is further supported by the fact that when Section 107(a) claims are proven, "CERCLA does not mandate joint and several liability in every case."  *Bd. of Cnty. Comm'rs of La Plata, Colo. v. Brown Grp. Retail, Inc.*, 768 F. Supp. 2d 1092, 1117 (citing *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 613-14 (2009)).

"equitably apportioned."  *Sun Co.*, 124 F.3d at 1193.  Furthermore, as El Paso states, "[t]he problem with [NL's] argument is that it assumes the Court will improperly allocate to NL liability attributable to third parties or orphans—but ARCO has already assumed any such shares of liability by limiting its complaint to NL."  *El Paso Reply* [#193-1] at 5.[7] Therefore, the Court rejects NL's arguments that NL is subject to an inequitable share of liability.

Thus, because NL has not met its burden of showing that it is subject to "an inequitable distribution of common liability[,]" the Court finds that NL fails to state a legally cognizable contribution claim pursuant to Section 113(f).  *See Atl. Rsch. Corp.*, 551 U.S. at 139; *Brown Grp. Retail*, 786 F. Supp. 2d at 1120.  Accordingly, the Court **recommends** that the United States Motion [#176] and the Redpath Motion [#189] be **granted** to the extent that they relate to Count I of the Second Amended Third-Party Complaint [#172], i.e., NL's contribution claims.  The Court therefore turns to the legal sufficiency of NL's declaratory judgment claim in the absence of a legally cognizable contribution claim.

## B.   Whether NL Sufficiently States a Declaratory Judgment Claim

As Redpath points out, "CERCLA actions for declaratory relief are dependent on the existence of a valid CERLCA claim."  *Redpath Motion* [#189] at 11 (citing *Hinds Invs., L.P. v. Team Enters., Inc.*, No. CV F 07-0703 LJO GSA, 2010 WL 1663986, at *10 (E.D.

---

[7]  NL appears to argue that any orphan share liability will not be equitably distributed because "ARCO has provided indemnities to other parties that NL has sued, and must have consciously decided not to sue them for that reason."  *United States Response* [#188-1] at 11 (providing no citation).  The Court declines to consider any such indemnities because they are not identified in or referred to in the Second Amended Third-Party Complaint [#172].  *See Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002) (stating that in deciding a Rule 12(b)(6) motion, a "court may only consider facts alleged within the complaint[,]" arguments, and "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity").

Cal. Apr. 22, 2010) ("In the absence of viable CERCLA liability, [a party] is not subject to CERCLA declaratory relief . . . .")); *see Union Station Assocs. LLC v. Puget Sound Energy, Inc.*, 238 F. Supp. 2d 1226, 1230 (W.D. Wash. 2002) ("Given that the Court granted partial summary judgment disposing of Union's § 107 claim for cost recovery, and with this order dismisses Union's § 113(f) claim, no substantive federal claims exist upon which to base Union's declaratory judgment claims.  The declaratory judgment causes of action are therefore dismissed.").  Because NL provides no contrary argument, the Court finds that NL concedes this point.  *Cf. Marks v. Colo. Dep't of Corrs.*, 976 F.3d 1087, 1099 (10th Cir. 2020) ("But this argument did not appear in the appellate briefs, and we do not consider arguments newly hatched at oral argument.") (citation omitted); *see generally United States Response* [#188-1]; *Redpath Response* [#191].

Therefore, because NL fails to state a legally cognizable contribution claim, the Court finds that NL has no basis to state a legally cognizable declaratory judgment claim. Accordingly, the Court **recommends** that the United States Motion [#176] and the Redpath Motion [#189] be **granted** to the extent that they relate to Count II of the Second Amended Third-Party Complaint [#172], i.e., NL's declaratory judgment claims.

## IV.  Conclusion

Based on the foregoing,

The Court respectfully **RECOMMENDS** that the United States Motion [#176] and the Redpath Motion [#189] be **GRANTED**, and that the Second Amended Third-Party Complaint [#172] be **DISMISSED in part without prejudice** to the extent that it relates to the United States, El Paso, and Redpath.[8]

---

[8]  The Court notes that, in the unlikely event that the conditions established by the AOC change, and ARCO asserts a renewed Section 107(a) claim against NL, NL *may* be able to assert a legally

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: August 19, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

---

cognizable contribution claim, and thus, a legally cognizable declaratory judgment claim. Therefore, the Court finds that dismissal with prejudice is inappropriate in the present action.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (holding that a dismissal with prejudice is only appropriate "where a complaint fails to state a claim for relief under Rule 12(b)(6) and granting leave to amend would be futile"); *see also* Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007) (citations and internal quotation marks omitted) (stating that a "proposed amendment is futile if the complaint, as amended, would be subject to dismissal" and finding that a tortious interference with a contract claim would be futile because a plaintiff failed to plead all required elements of a claim).