IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00234-RMR-KLM

ATLANTIC RICHFIELD COMPANY,            )
                                       )
        Plaintiff and Counterdefendant, )
                                       )
    v.                                 )
                                       )
NL INDUSTRIES, INC. and NL             )
ENVIRONMENTAL MANAGEMENT               )
SERVICES,                              )
                                       )
        Defendants, Counterclaimants, and )
        Third-Party Plaintiffs,        )
                                       )
    v.                                 )
                                       )
THE UNITED STATES OF AMERICA, et al.,  )
                                       )
        Third-Party Defendants.        )
                                       )

**NL INDUSTRIES, INC. AND NL ENVIRONMENTAL MANAGEMENT SERVICES' OPPOSITION TO ATLANTIC RICHFIELD COMPANY'S MOTION FOR CERTIFICATION OF APPEALABILITY PURSUANT TO 28 USC § 1292(b)**

NL Industries, Inc. ("NL") and NL Environmental Management Services ("EMS") (NL and EMS collectively referred to as "NL") oppose Atlantic Richfield Company's ("ARCO") Motion for Certification of Appealability (ECF 249).

**SUMMARY OF ARGUMENT**

ARCO provides no basis for this Court to certify an interlocutory appeal. Granting certification for an interlocutory appeal will not expedite resolution of this case. The fastest path to resolution is to have discovery commence with regard to the remainder of ARCO's $400,000 claim, and to proceed to a bench trial to decide the remaining issues on the evidence. NL is

1

confident that after all the evidence is heard, this Court will find that NL has no liability to ARCO of any kind. Such ruling will obviate the need for any appeal, as the statute of limitations ruling will become moot, because NL is simply not liable to ARCO. The Tenth Circuit should not be burdened with an appeal that will likely never matter. ARCO's Motion for Certification should be denied.

## POINT I

## ARCO SHOULD NOT BE GRANTED CERTIFICATION UNDER 28 U.S.C. § 1292(B)

Generally speaking, appellate jurisdiction is limited to appeals from final decisions of the district courts. *See Kearns v. Shillinger*, 823 F.2d 399, 400 (10th Cir. 1987). However, 28 U.S.C. § 1292(b) allows a district court to certify certain orders for interlocutory appeal. Section 1292(b) provides that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order . . . .

28 U.S.C. § 1292(b).

While it is entirely within a district court's discretion to certify an order for appeal under Section 1292(b), the Tenth Circuit has recognized that certification under 28 U.S.C. § 1292(b) "should be limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action." *State of Utah By & Through Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994) (citation and quotation marks omitted); *see also Carpenter v. Boeing Co.*, 456 F.3d 1183, 1189 (10th Cir. 2006) ("Interlocutory appeals have long been disfavored in the law, and properly so. They disrupt and delay the proceedings below."); *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (noting that interlocutory appeals are generally prohibited unless

litigants can show that an order will have serious consequences that can only be prevented by immediate appeal rather than appeal after judgment).

ARCO has shown none of the elements required for certification of an interlocutory appeal.

### A. ARCO Has Not Met the Controlling Question of Law Requirement of 28 U.S.C. 1292(b)

The first element required by 28 U.S.C. 1292(b) -- a controlling question of law for which there is a substantial ground for difference of opinion -- has not been met.

ARCO has not shown that there is a controlling question of law as to which there is substantial ground for difference of opinion. This requirement demands that the question presented for certification must be difficult, novel, and involve "a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions." *In re Grand Jury Proceedings June 1991*, 767 F. Supp. 222, 225 (D. Colo. 1991).

That is not remotely the case here. As this Court has already found, there is direct controlling Tenth Circuit case law that requires that ARCO's claims be dismissed based on the statute of limitations. That other courts might disagree with the Tenth Circuit does not make the issue difficult and novel in the Tenth Circuit. The Tenth Circuit has already unequivocally decided the issue. There is no reason for the Tenth Circuit to re-visit the issue on an interlocutory basis, particularly as the issue will likely become moot when the rest of ARCO's claims are found not to be viable -- because NL is not liable to ARCO.

First, ARCO's argument that *Sun Co., Inc. (R&M) v. Browning-Ferris, Inc.,* 124 F.3d 1187 (10th Cir. 1997), is no longer good law after *Cooper Indus., Inc. v. Aviall Servs., Inc.,* 543 U.S. 157 (2004), and *United States v. Atl. Research Corp.,* 551 U.S. 128 (2007) has no merit. *Sun Co.* has been cited scores of times since the Supreme Court decisions in *Aviall* and *Atl. Research*. The Tenth Circuit has cited positively to *Sun Co.,* after both *Aviall* and *Atl. Research*

3

were decided in 2004 and 2007 respectively, including in 2009 in *Friedland v. Tic-The Indus. Co.*, 566 F.3d 1203 (10th Cir. 2009).  The question is obvious:  If *Sun Co.* was no longer good law, why would scores of court including the Tenth Circuit still be citing to it?  This is no reason for an interlocutory appeal.

Second, there is no merit to ARCO's argument that it can use a CERCLA § 122(h) settlement with the government to resurrect its long barred claims.  As this Court made clear, and as the statutory language is clear, Section 122(h) only allows the government to settle its own claims, not any expenses that ARCO incurred.  *See* ECF 244, page 21, fn. 8 citing *Waste Mgt. of Pennsylvania, Inc. v. City of York*, 910 F. Supp. 1035, 1043 (M.D. Pa. 1995) ("Section 122(h) only allows EPA to settle the City's claims for those clean-up costs incurred by the Government."). There is no dispute of controlling law on this issue, never mind a substantial one.

Lastly, ARCO argues that "the single action principle" raises a controlling issue of law. There is no merit to that argument either.  As this Court correctly pointed out, less than 2 years ago, the Tenth Circuit in *Cyprus Amax Minerals Co. v. TCI Pacific Communications, LLC*, 28 F.4th 996, 1015 (10th Cir. 2022):

> held that "[i]n any given facility, there can be one removal action *plus* one remedial action." *See* [Doc. 202 at 19].  In so holding, the *Cyprus Amax Minerals* court relied upon *Colorado v. Sunoco, Inc.*, 337 F.3d 1233 (10th Cir. 2003).

[ECF 244 at 26].

At days' end, ARCO has not shown that there is any controlling issue of law which there is a substantial difference of opinion.

### B. ARCO Has Not Met the 28 U.S.C. § 1292(b) Requirement That An Interlocutory Appeal Will Materially Advance The Termination of this Litigation

ARCO has not met the second requirement of 28 U.S.C. § 1292(b).  ARCO has not shown that an appeal will materially advance the ultimate termination of this litigation.  Here, the facts are simple.  Over a more than 80-year period, ARCO, through a web of predecessor companies

4

including The Anaconda Company (including Anaconda Copper and Anaconda Minerals), International Smelting & Refining Company, Pelleyre Mining and Milling Company, and Rico-Argentine Mining Company aka RAMCO (collectively "ARCO"), damaged the environment through its massive mining and processing operations in and around the Town of Rico, Colorado. ECF 97-1, Powers Decl. at ¶ 25. ARCO vastly harmed the Town's drinking water supply, and the river that runs through Rico, the Dolores River. ECF 97-1, Powers Decl. at ¶ 43. Through its mines, mills, smelter, sulfuric acid plant and cyanide leach heap operations, ARCO also caused highly acidic water from tunnels and shafts that it built or expanded to drain into the Dolores River. ECF 97-1, Powers Decl. at ¶ 44.

ARCO's claim that NL has responsibility, because an alleged predecessor of NL, St. Louis Smelting and Refining Co. ("St. Louis") apparently built some portion of a tunnel into the mountain, largely for exploratory work before it ceased all activities and sold its interests in the early 1940s, does not pass muster under CERCLA. In 1944, when ARCO bought the tunnel, there was no water draining out of the tunnel, as shown in contemporaneous pictures. ECF 97-1, Powers Decl. at ¶ 30. St. Louis had nothing to do with the sulfuric acid plant, the cyanide leach heaps, or the 18 sludge ponds that ARCO built on the ARCO Site – all of which post-dated all ownership or operations of St. Louis. ECF 97-1, Powers Decl. at ¶ 47. St. Louis had nothing to do with any milling or smelter operations at the ARCO Site. ECF 97-1, Powers Decl. at ¶ 48.

Indeed, ARCO converted the St. Louis Tunnel from an exploratory and ore haulage tunnel with a functioning locomotive system and electricity into a drainage adit, which resulted in the commencement of the flow of water into the Dolores River that continues to this day. ECF 97-1, Powers Decl. at ¶ 30.

More so, by 1955, ARCO built a sulfuric acid plant that spewed sulfuric acid into the air, deforesting the Town of Rico, and into the water, causing massive fish kills in the Dolores River.

5

ECF 97-1, Powers Decl. at ¶ 27. ARCO built cyanide leach heaps that caused highly toxic cyanide to go into the Dolores River. ECF 97-1, Powers Decl. at ¶ 28. ARCO built a series of approximately 18 sludge ponds to deal with the hazardous wastes that its operations created. ECF 97-1, Powers Decl. at ¶ 29.

Following the termination of ARCO's mining operations, ARCO allowed the mines, including the St. Louis Tunnel, to purposely flood, which apparently caused significantly more water to be discharged to the Dolores River. ECF 97-1, Powers Decl. at ¶ 31. According to the State of Colorado, Bureau of Mines Information Report dated June 10, 1971: "Mining operations were ceased May 26, 1971 ... These lower levels will be allowed to flood, the St. Louis Tunnel is connected at the 500 level and any flooding above this elevation will be drained through this connection." The Colorado Bureau of Mines Information Report on the St. Louis Tunnel dated December 5, 1974 states in relevant part: "This tunnel provides drainage for the Rico Argentine and Blaine Mines. The mines are idle at present but drainage is maintained continuously."

In 1972, shortly after the intentional flooding of the mines, ARCO acquired the water rights to the discharge from the St. Louis Tunnel and the Blaine workings. (*See*, *In the Matter of the Application for Water Rights of Case No. W-802*, In the District Court in and for Water Division No. 7, State of Colorado, Case No. W-802 dated October 19, 1972 "St. Louis Tunnel" and *In the Matter of the Application for Water Rights of Case No. W-801,* In the District Court in and for Water Division No. 7, State of Colorado, Case No. W-801 dated October 19, 1972 "Blaine Tunnel"). ECF 97-1, Powers Decl. at ¶ 32. The Recommendation of the Division Engineer in Case No. W-802 (the St. Louis Tunnel water rights) states that "this is the main water supply for the operation of the Mining Company. The water is developed from their main tunnel." The Recommendation further notes that the "means of diversion" is

6

"gravity flow." ECF 97-1, Powers Decl. at ¶ 33.  In the application for Case No. W-802, Orval L. Jahnke, on behalf of Rico-Argentine, it states that the amount of water claimed from the St. Louis Tunnel is 538 gallons per minute to be used for "drilling water, cooling water, domestic water and stock water." ECF 97-1, Powers Decl. at ¶ 34.

According to an EPA summary, on August 11, 1974, a blowout occurred at the ARCO sulfuric acid plant. Buildup of cyanide liquor occurred in one area of the pile, and approximately 3,000 to 5,000 gallons of cyanide solution discharged into the Dolores River. ECF 97-1, Powers Decl. at ¶ 35.  The estimated number of fish killed was over 30,000 and the extent of mortality in the first four miles of the river downstream of the discharge was 100%. ECF 97-1, Powers Decl. at ¶ 36. In May of 1976, EPA and ARCO's RAMCO entered a consent decree with respect to the cyanide discharge. ECF 97-1, Powers Decl. at ¶ 37.

In 1988, ARCO abandoned its operation and maintenance of the water treatment remedy it had constructed and tried to pawn off its responsibilities onto a real estate developer. ECF 97-1, Powers Decl. at ¶ 13.  In doing so, ARCO failed to maintain the sludge ponds and the water treatment systems that it had built as a permanent remedy for that portion of the Site.  ECF 97-1, Powers Decl. at ¶ 42.  ARCO performed additional remedial work throughout the ARCO Site in the 1990's, using the area around the St. Louis tunnel as a "borrow area." ECF 97-1, Powers Decl. at ¶¶ 50-51.

These are the reasons why ARCO had to pay $400,000 to the EPA in oversight costs, not something done by NL's alleged predecessor more than 80 years ago.  St. Louis simply did nothing under CERCLA that makes it liable.  There was no disposal of any hazardous waste during the time period prior to 1943 – more than 80 years ago – that has caused ARCO to incur any response costs.  NL simply does not have CERCLA liability here.

7

Regardless, even if NL's alleged predecessor did something more than 80 years ago that raised CERCLA liability, the law is clear that when one party causes almost all of the problem, it is more than proper to allocate zero to a prior party that operated many years earlier. *See e.g. Halliburton Energy Services, Inc. v. NL Industries*, 648 F. Supp. 2d 840, 865 (S.D. Tex. 2009) ("It is permissible in certain circumstances to allocate zero response costs to a PRP. *See Kalamazoo*, 274 F.3d at 1049 ("The district court's decision not to allocate any costs for the [Remedial Investigation and Feasibility Study] to Rockwell was based upon its finding that the KRSG was responsible for more than 99.9% of the PCBs in the River. Although the KRSG challenges this finding . . ., it fails to show that the district court abused its discretion in looking to the relative quantities of PCBs released by the parties in allocating costs for the RI/FS."); *Acushnet*, 191 F.3d at 78 ("In an appropriate set of circumstances, a tortfeasor's fair share of the response costs may even be zero.") (citations omitted); *PMC*, 151 F.3d at 616 ("PMC's spills may have been too inconsequential to affect the cost of cleaning up significantly, and in that event a zero allocation to PMC would be appropriate. That was the district judge's judgment, and we cannot say that it was unreasonable.") (internal citations omitted).")

NL submits that its alleged predecessor's building part of a tunnel more than 80 years ago, which ARCO allowed to flood after befouling the environment, does not place any CERCLA liability on NL. But even if it does, NL will not have any allocated share for the reasons set forth above.

An interlocutory appeal will not expedite this matter. It will only add another layer of cost and time.

The most expeditious and least expensive thing to do is to conduct to a bench trial to determine if NL has any liability. There is no reason to not have the trial now, for if there is a finding of no liability for NL, there will be no reason for an appeal of the statute of limitations

8

issue. Simply put, the statute of limitations issue that ARCO wants an interlocutory appeal will likely never matter.

## POINT II

## ARCO'S MOTION FOR CERTIFICATION IS UNTIMELY

A Motion for Certification to appeal an Interlocutory Order must be timely. An appeal of any order must always be taken within 30 days from the date of the entry of the Order. While there is no statutory limit on the time to file a Motion for Certification under 28 U.S.C. § 1292(b), courts have considered timeliness within the usual 30 day limit for an appeal.

Here, the Order granting Partial Summary Judgment in favor of NL was issued and entered on **April 26, 2023** [ECF 244]. ARCO inexplicably waited until **June 30, 2023** -- more than two months later -- to file its Motion to seek certification. The two month delay, with no explanation as to why ARCO waited over two months, makes ARCO's Motion untimely.

District Courts routinely exercise their discretion to deny motions seeking certification when the motion is filed after an unreasonable amount of time -- and have repeatedly found that 2 months is too long. *See*, *e.g.*, *Green v. City of New York*, No. 05-0429, 2006 WL 3335051, at *2 (E.D.N.Y. Oct. 23, 2006) (denying motion for certification due to "defendants' more than two-month delay in requesting certification"); *Fabricant v. Sears Roebuck & Co.*, No. 98-1281, 2001 WL 883303, at *1 (S.D. Fla. Jan. 29, 2001) (denying motion for certification as untimely where "[d]efendants waited forty-six days after the filing of the [interlocutory order]"); *Ferraro v. Sec'y of U.S. Dep't of Health & Hum Servs.*, 780 F. Supp. 978, 979 (E.D.N.Y. 1992) (denying motion for certification after "plaintiff's two and a half month delay"); *Morton Coll. Bd. of Trustees v. Town of Cicero*, 25 F. Supp. 2d 882, 885 (N.D. Ill. 1998) (denying motion for certification as untimely when it was filed 30 days after the interlocutory order).

9

Undersigned counsel has not found a test articulated by the Tenth Circuit for timeliness with respect to motions filed in the District Court pursuant to 28 U.S.C. § 1292(b). However, the Seventh Circuit has repeatedly held that district courts must consider as a threshold issue whether a motion for certification was timely filed in deciding whether to certify an interlocutory order. *See Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (Posner, C.J.) (stating that § 1292(b) has "a nonstatutory requirement" that "the petition . . . be filed in the district court within a reasonable time after the order sought to be appealed"); *Richardson Elecs., Ltd. v. Panache Bd. of Penn., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000) ("[A] district judge should not grant an inexcusably dilatory request" for certification); *Weir v. Propst*, 915 F.2d 283, 287 (7th Cir. 1990) (suggesting that district court abused its discretion in certifying an interlocutory order where "[n]either the parties nor the district judge . . . presented any reason for the delay in certification").

Wholly apart from the fact that there is no merit to ARCO's appeal and no merit to its Motion for Certification, the fact that ARCO waited two months to file its Motion for Certification makes its Motion untimely, and it should be denied for that reason also.

## CONCLUSION

For the reasons set forth above, ARCO's Motion for Certification under 28 U.S.C. 1292(b). should be denied.

Date:   July 21, 2023                    Respectfully submitted,

/s/ Joel L. Herz
Joel L. Herz
LAW OFFICES OF JOEL L. HERZ
3573 East Sunrise Drive, Suite 215
Tucson, AZ  85718
(520) 529-8080
(520) 529-8077 (facsimile)
Email:  joel@joelherz.com

**CERTIFICATE OF SERVICE**

I certify that on the 21st day of July, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Joel L. Herz
Joel L. Herz
LAW OFFICES OF JOEL L. HERZ
3573 E. Sunrise Drive, Suite 215
Tucson, AZ  85718