# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Nina Y. Wang

Civil Action No. 20-cv-00234-NYW-KAS

ATLANTIC RICHFIELD COMPANY,

      Plaintiff and Counter Defendant,

v.

NL INDUSTRIES, INC., and
NL ENVIRONMENTAL MANAGEMENT SERVICES,

      Defendants and Counter Claimants.

---

## ORDER

---

This matter comes before the Court on three motions: (1) Plaintiff's Motion for Certification for Interlocutory Appeal Pursuant to 28 U.S.C. Section 1292(b) ("Motion for Interlocutory Appeal" or "Motion"), [Doc. 249, filed June 30, 2023]; (2) Plaintiff's Motion for Stay ("Motion to Stay"), [Doc. 250, filed June 30, 2023]; and (3) the Joint Stipulated Motion to Vacate Scheduling Conference Pending Decisions Re Interlocutory Appeal ("Motion to Vacate"), [Doc. 256, filed August 14, 2023]. Upon review of the record, and for the reasons set forth herein, the Court respectfully **GRANTS** the Motion for Interlocutory Appeal, **GRANTS** the Motion to Stay, and **GRANTS** the Motion to Vacate.

## BACKGROUND

The Court has detailed the background of this case in prior orders, *see* [Doc. 236; Doc. 244], and will do so here to the extent necessary to resolve the instant Motions. This case arises out of claims brought by Atlantic Richfield Company ("ARCO" or "Plaintiff") against NL Industries, Inc. and NL Environmental Management Services (collectively, "NL" or "Defendant"),

alleging that ARCO has incurred costs and will incur future costs in responding to releases and threatened releases of hazardous substances at certain facilities and locations within the Rico-Argentine Site (or the "Site")—an area located in and around the Rico-Argentine Mine in Rico, Dolores County, Colorado.  [Doc. 171 at ¶ 1].  In response to the release of hazardous substances within the Site, the United States Environmental Protection Agency ("EPA" or "the Government") issued a Unilateral Administrative Order ("UAO") effective March 23, 2011, against ARCO.  *See* [Doc. 217-4].  The UAO directed ARCO to "conduct removal actions . . . to abate an imminent and substantial endangerment to the public health or welfare or the environment that may be presented by the actual or threatened release of hazardous substances at or from the Site."  [*Id.* at ¶ 2].  ARCO alleges that since March 2011, it has made substantial progress implementing the required response actions as outlined in the UAO, at a cost exceeding $63.7 million.  [Doc. 171 at ¶¶ 3, 28].

On January 28, 2020, ARCO brought this civil action against NL, pursuant to § 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a) ("Section 107(a)"), which provides for joint and several liability among potentially responsible parties ("PRP").  *See* [Doc. 1].  Originally, ARCO sought to recover "response costs under CERCLA [S]ection 107(a) . . . to implement the Removal Action required by the UAO" at the Site, on the basis that NL is a PRP.  [*Id.* at 12].  On June 2, 2021, NL filed a motion for summary judgment arguing that ARCO's claims against it are barred by CERCLA's six-year statute of limitations for "remedial" response actions.  [Doc. 97].

Thereafter, on December 6, 2021, ARCO entered into an Administrative Settlement Agreement and Order on Consent for Removal Action (the "AOC") with the EPA, which "settled [ARCO's] liability to the United States for the matters addressed by the AOC."  [Doc. 171 at ¶ 4].

The AOC continues the "removal action" that ARCO began under the UAO.  [*Id.*]; *see generally* [Doc. 217-30 at 2–40].  ARCO subsequently moved to amend the operative pleading, arguing that, as a result of its settlement with the United States, it could only pursue a claim for contribution under CERCLA § 113, 42 U.S.C. § 9613 ("Section 113"), rather than cost recovery under Section 107, as a matter of law.  [Doc. 153 at 4].  In response, NL agreed that ARCO could no longer pursue a Section 107(a) claim, but could only pursue a Section 113 claim.  [Doc. 158 at 3].  Nevertheless, NL opposed the amendment, arguing that ARCO should not be permitted to convert a long-stale Section 107 claim into a contribution claim under Section 113, and that CERCLA could not be applied retroactively to NL.  [*Id.* at 2].  Over NL's objection, the Court[1] granted ARCO leave to amend the Complaint.  *See* [Doc. 164 at 12; Doc. 170 at 4].  The Court also denied the pending motion for summary judgment without prejudice to refiling.  [Doc. 170 at 5].

On May 2, 2022, ARCO filed the operative First Amended Complaint, wherein it asserts two claims against NL.  *See* [Doc. 171].  In the first claim, ARCO seeks contribution from NL for its equitably allocated response costs incurred by ARCO as required by the UAO and the AOC pursuant to CERCLA Section 113(f), 42 U.S.C. § 9613(f) ("Count I").  In the second claim, ARCO seeks declaratory relief in the form of "a judicial determination of the rights, duties, and obligations of the parties to this action with respect to the past, present, and future response costs and other related costs" under CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), and the Declaratory

---

[1] Originally, this action was assigned to Chief Judge Philip A. Brimmer and Magistrate Judge Kristen L. Mix.  [Doc. 5].  It was then reassigned to Judge Regina M. Rodriguez, who adopted Judge Mix's Recommendation for leave to file an amended complaint that dismissed ARCO's Section 107(a) claim.  [Doc. 110; Doc. 164; Doc. 170].  The case was subsequently reassigned to the undersigned judicial officer upon her confirmation as a District Judge.  [Doc. 205].

Judgment Act, 28 U.S.C. § 2201 ("Count II").  [*Id.* at 10–14].  NL filed its Answer on May 16, 2022.  [Doc. 172].

On August 2, 2022, NL filed a Renewed Motion for Partial Summary Judgment against ARCO, seeking partial summary judgment on the grounds that ARCO's claims against NL—with the exception of a $400,000 payment made to reimburse the EPA under the AOC[2]—are time-barred.  *See* [Doc. 202].[3]  The Court issued an Order granting in part and denying in part the Motion for Partial Summary Judgment on April 26, 2023.  *See* [Doc. 244].

On June 30, 2023, ARCO filed the instant Motion for Interlocutory Appeal, seeking certification for interlocutory appeal of the above-mentioned Order granting in part and denying in part Defendant's Motion for Partial Summary Judgment.  [Doc. 249].  ARCO filed the Motion to Stay the same day.  [Doc. 250].  NL responded to the motions on July 21, 2023, [Doc. 251; Doc. 252], and ARCO replied to the Motion for Interlocutory Appeal on August 4, 2023, [Doc. 254].  On August 14, 2023, the Parties jointly moved to vacate the Scheduling Conference—which is currently set for September 6, 2023 before the Honorable Kathryn A. Starnella—pending the Court's ruling on the Motion for Interlocutory Appeal and Motion to Stay, "and any related proceeding by the Tenth Circuit."  [Doc. 256 at 1–2]; *see* [Doc. 247; Doc. 255].  These motions are thus ripe for disposition.

**LEGAL STANDARD**

Under 28 U.S.C. § 1292, a district court may certify an issue for interlocutory appeal if three criteria are met: (1) the order involves a "controlling question of law"; (2) there is "substantial

---

[2] *See* [Doc. 217-30 at 22, ¶ 58 ("Within 30 days after the Effective Date, Respondent shall pay to EPA $400,000 for Past Response Costs.")].

[3] The Court cites to the page numbers generated by the Case Management/Electronic Case Files system, located at the top right of each page.

ground for difference of opinion" as to the resolution of the question; and (3) certification "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Appeals under this statute are "traditionally disfavored," *Vallario v. Vandehey*, 554 F.3d 1259, 1262 (10th Cir. 2009), and "exceedingly rare," *Carbajal v. Keefer*, 51 F. Supp. 3d 1065, 1068 (D. Colo. 2014). This is because interlocutory appeals "are necessarily 'disruptive, time-consuming, and expensive' for the parties and the courts." *Vallario*, 554 F.3d at 1262 (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294 (1st Cir. 2000)); *see also Goldberg v. UBS AG*, 690 F. Supp. 2d 92, 101 (E.D.N.Y. 2010) (noting that an interlocutory appeal may "prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions" (quotation omitted)).

Nevertheless, interlocutory review under 28 U.S.C. § 1292(b) "may be permitted where immediate appeal of a controlling issue will avoid protracted litigation." *Carbajal*, 51 F. Supp. 3d at 1068. The Court ultimately has discretion to determine whether to certify an order for interlocutory appeal, *id.*, and such relief "should be reserved for rare and extraordinary cases." *In re Richard D. Van Lunen Charitable Found.*, No. 22-cv-02309-REB, 2023 WL 4706758, at *3 (D. Colo. July 24, 2023) (citation omitted). To that end, the party seeking the interlocutory appeal "has a heavy burden to show that 'exceptional circumstances'" warrant immediate appellate review. *Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1065 (D. Haw. 2013) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

## ANALYSIS

Before turning to the arguments, the Court summarizes the relevant portions of Defendant's Motion for Partial Summary Judgment and the April 26, 2023, Order that ARCO presently seeks to appeal.

## I.    NL's Motion for Partial Summary Judgment and the Court's April 26, 2023, Order

The Parties' chief dispute in the Motion for Partial Summary Judgment turned on which statute of limitations applies under CERCLA.  *See generally* [Doc. 202; Doc. 217; Doc. 221]. Accordingly, the Court first analyzed which statute of limitations applied to Plaintiff's claims.  *See* [Doc. 244 at 16–24].  NL argued that the remainder of ARCO's claim for contribution—i.e., all except the $400,000 payment to the United States under the AOC—is subject to the limitations period under CERCLA Section 113(g)(2) (actions for recovery of "costs"), 42 U.S.C. § 9613(g)(2); whereas ARCO contended that its claims are governed by the limitations period under Section 113(g)(3) (actions for "contribution"), *id.* at § 9613(g)(3).  *See* [Doc. 202 at 11–17; Doc. 217 at 13–17].  On this issue, the Court found that the limitations period(s) under Section 113(g)(2) applies to ARCO's contribution claim.  *See* [Doc. 244 at 17–24].  In so finding, the Court relied upon the Tenth Circuit's decision in *Sun Co., Inc. (R&M) v. Browning-Ferris, Inc.*, 124 F.3d 1187 (10th Cir. 1997), wherein the Tenth Circuit applied Section 113(g)(2) (actions for recovery of "costs") to the plaintiffs' *contribution* action.  *See Sun Co.*, 124 F.3d at 1188–94.

Nevertheless, ARCO challenged the Tenth Circuit's analysis in *Sun Co.* as " questionable, at best, in light of two later United States Supreme Court decisions"—*Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004), and *United States v. Atlantic Research Corp.*, 551 U.S.

128 (2007).  [Doc. 217 at 14].[4]  Specifically, Plaintiff argued that in *Cooper Industries* and *Atlantic Research*, "the Supreme Court clarified that private litigants have two distinct causes of action under CERCLA—cost recovery under [S]ection 107(a) and contribution under [S]ection 113(f)—that 'complement each other' by applying to 'persons in different procedural circumstances.'"  [*Id.* (quoting *Atl. Rsch.*, 551 U.S. at 139)].  And after those cases were decided, Plaintiff continued, "a [S]ection 113(f) contribution claim no longer can be regarded as just a subset of a [S]ection 107(a) cost recovery claim as the Tenth Circuit conceived of it in *Sun Co.*"  [*Id.*].  Even so, Plaintiff acknowledged that "*Sun Co.* has not been expressly overruled," but contended that "courts considering [that case] after these two Supreme Court decisions do not regard its statute of limitations analysis as having continuing validity."  [*Id.*].  In the subject Order, this Court similarly acknowledged that "courts outside of the Tenth Circuit—including federal circuit courts of appeal—have called the holding of *Sun Co.* into question."  [Doc. 244 at 23 (collecting cases)].  Ultimately, however, the Court found in favor of NL (thus applying Section 113(g)(2)) on the basis that "neither *Cooper Industries* nor *Atlantic Research Corp.* expressly overturned the Tenth Circuit's holding in *Sun Co.*, and there is no other intervening authority from the United States Supreme Court or the Tenth Circuit that casts any direct doubt on it."  [*Id.*].

Next, the Court analyzed Plaintiff's contribution claim under Section 113(g)(2), which contains two separate limitations periods, depending on whether the response action at issue is characterized as a "removal action" (three years after completion of the removal action) or "remedial action" (within six years after initiation of physical on-site construction of the remedial

---

[4] According to Plaintiff, *Cooper Industries* and *Atlantic Research Corp.* stand for the proposition that "a [S]ection 113(f) contribution claim no longer can be regarded as just a subset of a [S]ection 107(a) cost recovery claim as the Tenth Circuit conceived of it in *Sun Co.*"  [Doc. 217 at 14].

action).  *See* [*id.* at 24–30]; 42 U.S.C. § 9613(g)(2)(A)–(B); *see also New York v. Next Millenium Realty, LLC*, 732 F.3d 117, 126 (2d Cir. 2013) (explaining that the determination of whether a response is a "removal action" or "remedial action" is a question of law).  NL argued that ARCO's response at the Rico-Argentine Site—i.e., the work performed under the UAO and AOC—is a "remedial action" that is subject to Section 113(g)(2)(B)'s six-year statute of limitations, triggered from the initiation of physical construction at the Site in 2011.  *See* [Doc. 202 at 8–22]; *compare* 42 U.S.C. § 9613(g)(2)(B) (requiring that actions be commenced "within 6 years after initiation of physical on-site construction of the remedial action"), *with* [Doc. 217-1 at ¶ 40 (ARCO agreeing that the work started in 2011)].  ARCO countered that its response at the Site is a "removal action" that is subject to Section 113(g)(2)(A)'s filing limitations period of "[three] years after completion of the removal action."  *See* [Doc. 217 at 18–24]; 42 U.S.C. § 9613(g)(2)(A).  Thus, according to ARCO, its contribution claim is timely because its work (i.e., the response action) at the Site is ongoing, and therefore Section 113(g)(2)(A)'s three-year limitations period has not yet begun to run.  *See* [Doc. 217 at 18 ("This work has not been completed and therefore no [S]ection 113(g)(2) limitations period has been triggered and NL's motion must be denied on this ground as well.")].

Despite these arguments, the Court found that it did not need to resolve the issue of whether ARCO's cleanup at the Site is a "remedial action" or "removal action," for two reasons.  [Doc. 244 at 25].  First, there was no dispute that ARCO's claims would be time-barred if its cleanup were characterized as a "remedial action" and, therefore, subject to the six-year limitations period under CERCLA Section 113(g)(2)(B), triggered from the initiation of physical, on-site construction in 2011.  [*Id.* at 25–26].  Second, assuming, without deciding, that ARCO's response is a "removal action," the Court found that ARCO's contribution claim still fails based on the "single action" principle—that is, under applicable law, there can be only *one* "removal action" at

a given site—and because of a prior removal action at the Rico-Argentine Site in 2000, ARCO could not maintain its claims against NL for contribution costs for its current "removal action." [*Id.* at 26]; *see* [Doc. 217-1 at ¶ 33 (agreeing that, in 2000, the EPA performed "an *emergency removal action* to stabilize the erosion that was occurring on ARCO's sludge ponds, and to stop the discharge of acidic water into the Dolores River" (emphasis added))].  In so concluding, the Court relied upon two cases—*Cyprus Amax Minerals Co. v. TCI Pacific Communications, LLC*, 28 F.4th 996 (10th Cir. 2022), and *Colorado v. Sunoco, Inc.*, 337 F.3d 1233 (10th Cir. 2003)— where the Tenth Circuit held that "[i]n any given facility, there can be one removal action *plus* one remedial action." *Cyprus Amax Mins.*, 28 F.4th at 1015 (citing *Sunoco*, 337 F.3d at 1241); *see Sunoco*, 337 F.3d at 1241 ("In our view, this language [under Section 113(g)(2)] indicates there will be but one 'removal action' per site or facility, as well as a single 'remedial action' per site or facility.").  Further, although ARCO argued that "CERCLA does not limit the number of response actions at a site," [Doc. 217 at 24], the Court found that "none of the non-Tenth Circuit cases [cited by ARCO to support its argument] are binding on this Court," particularly in light of the above-referenced Tenth Circuit jurisprudence.  [Doc. 244 at 27–28].

The Court ultimately granted NL's Motion for Partial Summary Judgment only "insofar as [NL] seeks summary judgment as to ARCO's Section 113(f) contribution claim under Count I, with the exception of the $400,000 payment to the EPA pursuant to the 2021 AOC." [Doc. 244 at 30].  The Court declined, however, to grant NL summary judgment on any portion of ARCO's claim seeking declaratory judgment under Count II, given that "the Parties [had] not expressly briefed the issue of declaratory relief, and their respective obligations under CERCLA" were not "fully resolved" with the Motion for Partial Summary Judgment.  [*Id.* at 31].

## II.        Motion for Interlocutory Appeal

In the instant Motion for Interlocutory Appeal, ARCO argues that this Court should certify

its April 26, 2023, Order for appellate review to resolve three unsettled questions of law:

> (1) Whether *Sun Co., Inc. (R&M) v. Browning-Ferris, Inc.,* 124 F.3d 1187 (10th Cir. 1997), remains good law after *Cooper Indus., Inc. v. Aviall Servs., Inc.,* 543 U.S. 157 (2004), and *United States v. Atl. Research Corp.,* 551 U.S. 128 (2007);
>
> (2) Whether a settlement entered under Section 122(h), which resolves a party's CERCLA liability to the United States for the payment of EPA's costs and performance of cleanup work, triggers a contribution claim for both the costs a party pays to EPA and the costs it incurs to perform the cleanup work, and consequently triggers the commencement of a new three-year limitations period under Section 113(g)(3); and
>
> (3) Whether the single-action principle applies to a geographically diverse site involving multiple temporally and substantively discrete response actions.

[Doc. 249 at 2].  For support, ARCO contends that all of the requirements for interlocutory appeal

under 28 U.S.C. § 1292(b) are satisfied—namely, (1) the conclusions supporting the Order present

controlling questions of law; (2) there is substantial ground for difference of opinion regarding

whether ARCO's contribution claim is time-barred; and (3) an immediate appeal will materially

advance the ultimate termination of this case.  [*Id.* at 5–17].  The Court will address each element

in turn.

### A.        28 U.S.C. § 1292(b)

#### 1.        Controlling Question of Law

In determining whether the Court's April 26, 2023, Order involves a "controlling question

of law" within the meaning of 28 U.S.C. § 1292(b), the Court must first determine whether the

Order involves a "question of law," and if so, whether that question of law is "controlling."  The

phrase "question of law" under § 1292(b) generally refers to "a question of the meaning of a

statutory or constitutional provision, regulation, or common law doctrine."  *Al-Turki v. Tomsic*,

No. 15-cv-00524-REB-KLM, 2017 WL 1243068, at *1 (D. Colo. Mar. 24, 2017) (quoting

*Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000)).  "A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so."  *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996).

The Court finds that the April 26, 2023, Order involves at least two "questions of law" under § 1292(b).  First, whether the Tenth Circuit's decision in *Sun Co.*—which established that a claim for *contribution* is subject to the statute of limitations under CERCLA Section 113(g)(2) (actions for recovery of *costs*)—remains good law after the Supreme Court's decisions in *Cooper Industries* and *Atlantic Research*.  *See* [Doc. 249 at 2, 6–11].  And second, "which statute of limitations applies to a contribution claim for CERCLA response costs incurred to perform work under a Section 122(h) settlement agreement."  [*Id.* at 6].  As to this second issue, although consideration of this question may require the Tenth Circuit to apply law to fact, the factual context is straightforward, given that the "Section 122(h) settlement agreement" at issue in this case is the 2021 AOC, the existence and substance of which are undisputed.  *Compare, e.g.*, *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371 (S.D.N.Y. 2008) ("The question of law certified for interlocutory appeal must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." (internal quotation marks and citations omitted)), *with Coca v. City of Dodge City*, No. 22-1274-EFM, 2023 WL 3948472, at *1, *3 (D. Kan. June 12, 2023) (denying interlocutory appeal partly on the grounds that certification of certain questions for appeal "would not materially advance the ultimate resolution of [the] case" insofar as the questions were "inextricably entwined with the case as [a] whole").  However, the law to apply to those facts—specifically, whether the three-year statute of limitations under Section 113(g)(3) (for contribution actions) applies where a party seeks contribution from a PRP

for response costs that the seeking party incurred pursuant to a Section 122(h) settlement agreement—is unsettled, particularly in light of the *Sun Co.* holding.  Given this record, both of these issues constitute "questions of law" under § 1292(b) that are well-suited for resolution on appeal.  *See Ahrenholz*, 219 F.3d at 676; *Pub. Serv. Co. of N.M. v. Approx. 15.49 Acres of Land*, 167 F. Supp. 3d 1248, 1270 (D.N.M. 2016) ("[C]ases involving statutory interpretation are well suited for interlocutory appeal.")].

Moreover, "these two questions of law, when considered together, are manifestly 'controlling.'"  *Kerr v. Hickenlooper*, No. 11-cv-01350-WJM-BNB, 2012 WL 4359076, at *2 (D. Colo. Sept. 21, 2012).  Specifically, if the Tenth Circuit were to hold on appeal that *Cooper Industries* and *Atlantic Research* effectively abrogated *Sun Co.* such that Plaintiff's Section 113(f) contribution claim is subject to the three-year limitations period under Section 113(g)(3), triggered from the entry of the 2021 AOC, that would significantly impact the total amount of Plaintiff's contribution claim that is subject to allocation—"that is, whether this is an approximately $100 million case or a $400,000 case."  [Doc. 249 at 7]; *see Sokaogon Gaming*, 86 F.3d at 659 ("A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so.").  In sum, the Court finds that its April 26, 2023, Order involves controlling questions of law under § 1292(b).

## 2.   Substantial Ground for Difference of Opinion

In addition, the Court finds that there are substantial grounds for differences of opinion regarding these controlling questions of law.  A substantial ground for difference of opinion may exist where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (quotation omitted); *see also Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir.

2011) ("A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed.").

First, ARCO argues persuasively that *Sun Co.* "is no longer good law" given that, when that case was decided in 1997, the Tenth Circuit "conceived of contribution actions [under Section 113(f)] as a subset of cost-recovery actions under Section 107(a)." [Doc. 249 at 8]. Since that time, however, ARCO contends that the Supreme Court "held that a plaintiff PRP that had not been sued under Section 106 or 107—just like the plaintiff in *Sun Co.*—could not bring a Section 113(f)(1) contribution claim." [*Id.* at 9 (citing *Cooper Indus.*, 543 U.S. at 165) (emphasis omitted)]. ARCO also points out that, in *Atlantic Research*, the Supreme Court "clarified the relationship between Sections 107 and 113, explaining that they provide 'causes of action to persons in different procedural circumstances' and that cost recovery under § 107(a) and contribution under § 113(f) are two 'clearly distinct remedies.'" [*Id.* (some internal quotation marks omitted) (citing *Atl. Rsch.*, 551 U.S. at 138–39)].

Indeed, as explained above, this Court has already acknowledged the existence of substantial grounds for differences of opinion regarding the applicable statute of limitations for a CERCLA contribution claim, noting that "courts outside of the Tenth Circuit—including federal circuit courts of appeal—have called the holding of *Sun Co.* into question." [Doc. 244 at 23]. For instance, in *Hobart Corp. v. Waste Management of Ohio, Inc.*, 758 F.3d 757 (6th Cir. 2014), the Sixth Circuit held that "§ 113(g)(2) is irrelevant to resolving whether [the appellants'] contribution action was timely filed and that § 113(g)(3) provides the statute of limitations for all contribution actions." *Hobart*, 758 F.3d at 773. In so holding, the Sixth Circuit expressly rejected *Sun Co.*'s holding "that contribution actions can be governed by the limitations found in § 113(g)(2),"

explaining that *Sun Co.* is a "pre-*Cooper Industries* case[]" that "conceived of contribution actions as a subset of cost-recovery actions under § 107." *Id.* However, the court continued:

> *Cooper Industries* and *Atlantic Research* have clarified that §§ 107 and 113 offer distinct causes of action and, therefore, are governed by distinct statutes of limitations. Thus, . . . [*Sun Co.* is] no longer good law on this point.

*Id.* at 773–74. In so concluding, the Sixth Circuit also overruled one of its own pre-*Cooper Industries* cases that expressly relied upon *Sun Co.*'s holding. *See id.* (rejecting *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 353 (6th Cir. 1998), as "no longer good law on this point"). And, as previously noted, other courts have similarly rejected *Sun Co.*'s holding regarding CERCLA's statute of limitations for contribution claims, in light of the Supreme Court's decisions in *Cooper Industries* and/or *Atlantic Research*.[5]

Nothing in NL's Response persuades this Court that there is no substantial ground for difference of opinion regarding the continued reliability of the Tenth Circuit's holding in *Sun Co.*

---

[5] *Compare Sun Co.*, 124 F.3d at 1192–94 (rejecting argument that the three-year limitations period under Section 113(g)(3) applies to "all contribution claims," and concluding that "[a] PRP who incurred cleanup costs . . . pursuant to an EPA unilateral administrative order[] will have its contribution claim governed by the limitations period in [Section] 113(g)(2), which governs 'initial actions' for recovery of such costs"), *with Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 712 (3d Cir. 2019) (describing *Sun Co.* as "stale" in light of *Atlantic Research*, where "the Supreme Court . . . has clarified that cost recovery and contribution are 'clearly distinct' causes of action"), *Asarco LLC v. Atl. Richfield Co.*, 866 F.3d 1108, 1117 (9th Cir. 2017) ("Sections 107(a) and 113(f) have different statutes of limitations periods."), *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 609 (8th Cir. 2011) ("Section 113(g)(3) sets forth a separate limitation period for contribution claims."), and *Chevron Mining, Inc. v. United States*, No. 13-cv-00328 MCA-KK, 2015 WL 13650031, at *5 (D.N.M. Mar. 31, 2015) (collecting cases post–*Atlantic Research*, and observing that "[m]ost circuits, after *Atlantic Research*, have not allowed a plaintiff to pursue a cost recovery claim when a contribution claim is available." (quoting *Bernstein v. Bankert*, 733 F.3d 190, 204 (7th Cir. 2013))); *cf. Refined Metals Corp. v. NL Indus. Inc.*, 937 F.3d 928, 929–30 (7th Cir. 2019) ("It matters, in our opinion, whether this is a [S]ection 113(f)(3)(B) contribution action or a [S]ection 107(a) cost-recovery case. If it were the latter, we would need to conduct a searching examination of what actions to clean up the site anyone has taken, and when. But we can skip that inquiry, because we agree with the district court that this is a [S]ection 113(f)(3)(B) contribution action, and the limitations period had expired by the time Refined filed suit.").

According to NL, Plaintiff's challenge to *Sun Co.* "has no merit" because "*Sun Co.* has been cited scores of times since the Supreme Court decisions in" *Cooper Industries* and *Atlantic Research*, including by the Tenth Circuit in *Friedland v. TIC-The Industrial Co.*, 566 F.3d 1203 (10th Cir. 2009). [Doc. 251 at 3–4]. The Court respectfully disagrees. At the outset, despite Defendant's assertion that "scores of court [sic]" have cited *Sun Co.* with approval since the Supreme Court decided *Cooper Industries* and *Atlantic Research*, [*id.* at 4], the *only* such case identified by Defendant is *Friedland*. *See* [Doc. 254 at 2 (Plaintiff noting that Defendant "does not cite any of the cases that [purportedly] rely on *Sun Co.* or explain for what purpose they have cited it")]. Significantly, *Friedland* cited *Sun Co.* not for its holding that a PRP who incurred cleanup costs pursuant to an EPA unilateral administrative order—like ARCO here—"will have its contribution claim governed by the limitations period in § 113(g)(2), which governs 'initial actions' for recovery of such costs." *Sun Co.*, 124 F.3d at 1194. Rather, the *Friedland* court was expressly analyzing whether the collateral source rule[6] "applies to claims brought pursuant to CERCLA," *Friedland*, 566 F.3d at 1206, and in doing so, referenced *Sun Co.* solely for purposes of defining a CERCLA contribution claim. *Id.* at 1206–07; *see* [Doc. 254 at 2–3 (arguing that "NL does not cite any of the cases that rely on *Sun Co.* or explain for what purpose they have cited it"; and *Friedland* "did not involve any statute of limitations issues" and did not address "the unsettled question of law for which [ARCO] seeks certification" in the instant Motion for Interlocutory Appeal)]. What is more, and notwithstanding NL's present arguments, NL has previously argued before the Seventh Circuit that generally, "when a person resolves its liability to the United States or a State through a judicially approved settlement, . . . [s]uch a settlement starts the clock on the

---

[6] The collateral source rule "permits an injured plaintiff to recover more than the damages he has suffered as the result of an injury." *Friedland*, 566 F.3d at 1206.

three-year statute of limitations for the contribution claim that accrues on the basis of that settlement." Brief of the Defendant-Appellee, NL Industries, Inc. at 64, *Refined Metals Corp. v. NL Indus. Inc.*, No. 18-3235 (7th Cir. Jan. 14, 2019), ECF No. 19.

Second, ARCO argues that there is substantial ground for difference of opinion as to whether Section 113(g)(3) applies to a "[m]ixed Section 122(h) [a]dministrative [s]ettlement."[7] [Doc. 249 at 11–13]. According to ARCO, "[t]he Tenth Circuit has not decided which of CERCLA's statutes of limitations applies to a contribution claim brought by a settling PRP against a non-settling PRP to allocate responsibility for response costs incurred for performing work pursuant to an administrative settlement agreement with the United States." [*Id.* at 12]. However, ARCO continues, courts within and outside the Tenth Circuit "have considered mixed administrative settlement agreements to be Section 122(h) settlements that trigger Section 113(g)(3) and give rise to a contribution claim for *all matters* addressed by the settlement." [*Id.*].[8] Further, according to ARCO, "courts emphasize that the scope of a contribution claim that is triggered by a settlement agreement is defined by the matters addressed in the settlement

---

[7] ARCO appears to use the term "mixed Section 122(h) administrative settlement" to refer to the type of settlement at issue in the 2021 AOC—that is, a settlement that "provides for the performance of a removal action by [ARCO] *and* the payment of certain response costs incurred by the United States at or in connection with the Rico-Argentine Site." [Doc. 217-30 at 4, ¶ 1 (emphasis added)]; *see* [Doc. 249 at 11–12].

[8] For support, ARCO cites *Hobart Corp.*, 758 F.3d at 766 (holding that mixed settlement agreement that resolved PRP's liability constituted an administrative settlement under Section 113(f)(3)(B)); *Arconic, Inc. v. APC Investment Co.*, 969 F.3d 945, 955 (9th Cir. 2020) (holding that entry into "2017 consent decree" that required PRP to finance and implement a "pump-and-treat system" triggered the right to contribution and three-year limitations period under Section 113(f)(3)(B)); *Chevron Mining, Inc.*, 2015 WL 13650031, at *6–7 (permitting claim for contribution under Section 113(f)(1) to allocate response costs incurred pursuant to administrative order); and *Peoples Gas Light & Coke Co. v. Beazer East, Inc.*, No. 14 C 2434, 2014 WL 4414537, *4–5 (N.D. Ill. Sept. 8, 2014) (finding AOCs that included work and payment obligations triggered statute of limitations in Section 113(g)(3)(B)). *See* [Doc. 249 at 12].

agreement." [*Id.*].[9]   Based on the above, ARCO contends that courts that have considered this issue "would likely hold in this case that [ARCO's] entry into the AOC gave rise to a contribution claim for *all matters* addressed in the AOC—both Work Costs[10] and the payment made to the EPA—that is subject to the statute of limitations in Section 113(g)(3)(B)." [*Id.* at 13].

The Court finds ARCO's reasoning, including the cases cited in its opening brief, to be persuasive.  The AOC here expressly states that it resolved ARCO's liability to the United States within the meaning of CERCLA Section 122(h)(4), 42 U.S.C. § 9622(h)(4),[11] for the "matters addressed"[12] in the AOC.  [Doc. 217-30 at 31, ¶ 94]; *see also* [*id.* at 4, ¶ 1 ("This Settlement provides for the performance of a removal action by Respondent and the payment of certain response costs incurred by the United States at or in connection with the Rico-Argentine Site")].  And an administrative settlement within the meaning of CERCLA Section 122(h) expressly

---

[9] ARCO cites *Arconic*, 969 F.3d at 954 (concluding that "[t]he better reading [of Section 113(f)] is that the provision's reference to settlements means the agreement imposing the costs in question"); *Raytheon Aircraft Co. v. United States*, 435 F. Supp. 2d 1136, 1144 (D. Kan. 2006) (holding that "a proper reading of [S]ection 113(f)(3)(B) is one that limits a plaintiff's right to contribution to those response costs for which it has resolved its liability in settlements with the United States or a State"); and *Racer Properties LLC v. National Grid USA*, 610 F. Supp. 3d 451, 464 (N.D.N.Y. 2022) ("[C]ourts routinely use the 'matters addressed' sections of § 113 consent decrees to set the bounds of contribution protection and, thus, the scope of available contribution claims under § 113(f)(3)(B)."). *See* [Doc. 249 at 12–13].

[10] ARCO defines "Work Costs" as "the past costs of performing the removal action required by the UAO and the AOC." [*Id.* at 4].

[11] Section 122(h)(4) provides: "A person who has resolved its liability to the United States under this subsection shall not be liable for claims for contribution regarding matters addressed in the settlement.  Such settlement shall not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement."  42 U.S.C. § 9622(h)(4).

[12] The phrase "matters addressed" includes "the Work, Past Response Costs, and Future Response Costs," [Doc. 217-30 at 31, ¶ 94]—terms with more particular definitions under the AOC, but which generally describe ARCO's activities and obligations under the UAO and AOC (i.e., cleanup work at the Rico-Argentine Site), and the EPA's costs for overseeing those obligations. *See* [*id.* at 6, 8 (defining the terms)].

implicates the three-year statute of limitations under Section 113(g)(3). *See* 42 U.S.C. § 9613(g)(3)(B). Even so, this Court rejected ARCO's argument, in response to the Motion for Partial Summary Judgment, that "[a]ll CERCLA contribution claims—*whether the scenario under which they arise is expressly listed in 42 U.S.C. § 9613(g)(3)(A) and (B) or not*—are subject to the three-year statute of limitations in [S]ection 113(g)(3)." [Doc. 217 at 13–14 (emphasis added)]; *see* [Doc. 244 at 21–22]. Significantly, however, the Court rejected this argument by ARCO because the Tenth Circuit had considered and rejected the same argument in *Sun Co. See* [Doc. 244 at 21–24]; *Sun Co.*, 124 F.3d at 1192–93. Indeed, the Court agreed with ARCO that other courts have since "called the holding of *Sun Co.* into question," [Doc. 244 at 23 (first citing *Cranbury Brick Yard*, 943 F.3d at 712; then *Refined Metals Corp.*, 937 F.3d at 929–30; then *Morrison Enters.*, 638 F.3d at 609; and then *Asarco*, 866 F.3d at 1117)]; but, in the absence of any intervening authority from the Supreme Court or Tenth Circuit, this Court was "bound by the clear precedent of the Tenth Circuit, regardless of how persuasive ARCO's opposing arguments may be." [*Id.*].

NL responds that "there is no merit to ARCO's argument that it can use a CERCLA § 122(h) settlement with the government to resurrect its long[-]barred claims." [Doc. 251 at 4]. This is so, NL explains, because "this Court made clear, and . . . the statutory language is clear, [that] Section 122(h) only allows the government to settle its own claims, not any expenses that ARCO incurred," and "[t]here is no dispute of controlling law on this issue, never mind a substantial one." [*Id.*]. Not only is this position conclusory, but it ignores any distinction between the Tenth Circuit's CERCLA statute-of-limitations analysis in *Sun Co.* and the post-*Cooper Industries/Atlantic Research* cases which, although consistent with each other, have reached different conclusions from *Sun Co. See* discussion of cases *supra*; *cf., e.g.*, *Refined Metals Corp.*,

937 F.3d at 932 ("The trigger for [S]ection 113(f)(3)(B) encompasses settlements that leave at least *some* liability open, given that this subpart of the statute describes a qualifying settlement as one that 'has resolved [a defendant's] liability to the United States or a State for *some or all* of a response action or for *some or all* of the costs of such action.'  (Emphasis added).  We have observed that CERCLA does not favor 'slicing and dicing of costs incurred under the same administrative order . . . .'  [*NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 692 (7th Cir. 2014)].  The same logic applies here.").

In sum, the Court finds that substantial grounds for differences of opinion exist regarding the two issues discussed above, given that they raise questions regarding CERCLA's statute of limitations for contribution claims based on the Tenth Circuit's analysis in *Sun Co.  See* 16 Charles Alan Wright et al., *Federal Practice & Procedure* § 3930 (2d ed. 2012) ("The level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case.  If proceedings that threaten to endure for several years depend on an initial question of . . . limitations, or the like, certification may be justified at a relatively low threshold of doubt.").

### 3.  Material Advancement of the Ultimate Termination of the Litigation

Finally, the Court finds that an interlocutory appeal as to these issues will materially advance the ultimate termination of this litigation.  An immediate appeal advances the termination of litigation where it "would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly."  *XTO Energy, Inc. v. ATD, LLC*, 189 F. Supp. 3d 1174, 1195 (D.N.M. 2016) (quoting *Coates v. Brazoria Cnty.*, 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013)).

There is no dispute that ARCO remains able to pursue contribution for a portion of the $400,000 that was excepted from the relief granted in the April 26, 2023, Order that ARCO

currently seeks to appeal.  *See* [Doc. 249 at 15].  And, as ARCO points out in its opening brief, there is apparent overlap between "[t]he dismissed and the remaining portions of [ARCO's] contribution claim . . . because they both seek contribution for CERCLA response costs that [it] has incurred or will incur at the [S]ite."  [*Id.* at 15–16].  As a result, "[p]roving each portion of the contribution claim requires development and presentation of similar facts and expert testimony."  [*Id.* at 16].  ARCO continues:

> Regardless of which category of costs are being sought, Atlantic Richfield will have the same evidentiary burdens—namely to prove that NL is a liable party under Section 107(a), that Atlantic Richfield has incurred response costs consistent with CERCLA's implementing regulations (the "National Contingency Plan" or "NCP," 40 C.F.R. Part 300), and that various equitable factors support allocating an equitable portion of Atlantic Richfield's costs to NL.

[*Id.*].

NL does not dispute any of these points.  *See* [Doc. 251 at 4–9].  Instead, NL argues that it is not liable under CERCLA for any damages to ARCO.  *See, e.g.*, [*id.* at 8 ("NL submits that its alleged predecessor's building part of a tunnel more than 80 years ago, which ARCO allowed to flood after befouling the environment, does not place any CERCLA liability on NL.  But even if it does, NL will not have any allocated share for the reasons set forth above.")].  NL contends that "[a]n interlocutory appeal will not expedite this matter" and "will only add another layer of cost and time."  [*Id.*].  It urges that "[t]he most expeditious and least expensive thing to do is to conduct . . . a bench trial to determine if NL has any liability," because "if there is a finding of no liability for NL, [then] there will be no reason for an appeal of the statute of limitations issue."  [*Id.* at 8–9].  NL further insists that "[s]imply put, the statute of limitations issue . . . will likely never matter."  [*Id.* at 9].  The Court respectfully disagrees.

As explained above, the controlling questions of law here relate to CERCLA's statute of limitations for contribution claims, the resolution of which will likely have a substantial impact in

this case.  Specifically, if the Tenth Circuit were to hold on appeal that the statute of limitations analysis in *Sun Co.* is no longer good law in light of *Cooper Industries* and *Atlantic Research*, that decision would materially advance the termination of the litigation insofar as it would clarify the total amount of Plaintiff's contribution claim that is subject to allocation—"that is, whether this is an approximately $100 million case or a $400,000 case."  [Doc. 249 at 7]; *see Kerr*, 2012 WL 4359076, at *3 ("The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." (quoting Wright et al., *Federal Practice & Procedure* § 3930)).

Moreover, despite NL's urging this Court to proceed to a bench trial on the merits, *see* [Doc. 251 at 8], to date, no scheduling order has been entered in this case.[13]  Indeed, the Scheduling Conference is presently set for September 6, 2023.  *See* [Doc. 247].  And notwithstanding the prematurity of Defendant's proposal to "have the trial now" as "[t]he most expeditious and least expensive thing to do," [Doc. 251 at 8], expedience and cost are not the only (or even the primary) concerns of this Court.  *See* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the *just*, speedy, and inexpensive determination of every action and proceeding" (emphasis added)); *see also* [Doc. 249 at 16 ("If [ARCO] is required to wait until there has been a final judgment to appeal the Court's determination that the portion of the contribution claim for Work Costs is time barred, and is successful in that appeal, the Court and the parties would have to endure a second round of discovery and trial on many of the same issues that are the subject of the remaining case.")].

---

[13] *See* [Doc. 250 at 3 ("To date, for various reasons, there has not been a scheduling order governing this case.  Although the parties made initial Rule 26(a)(1) disclosures some time ago, they have not conducted any fact or expert discovery.")]; *see also, e.g.*, [Doc. 237; Doc. 245; Doc. 247].

In sum, in light of the amount and issues at stake in this case, the Court finds that an interlocutory appeal as to the questions discussed above will materially advance the ultimate termination of the litigation.

### B.       Timeliness of Motion for Interlocutory Appeal and Timing of Certification

NL also objects to the Motion for Interlocutory Appeal as untimely.  *See* [Doc. 251 at 9–10].  Although NL admittedly cannot identify "a test articulated by the Tenth Circuit" regarding the timeliness to seek certification under § 1292(b), it cites authority from the Seventh Circuit for the proposition that there is a "nonstatutory requirement" that "the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed."  *Ahrenholz*, 219 F.3d at 675; *see* [Doc. 251 at 10].

Even if this Court were to subscribe to the Seventh Circuit's "reasonable time" standard, the Court finds that the Motion for Interlocutory Appeal is timely.  The Court issued the subject Order on April 26, 2023.  [Doc. 244].  At the time, a Scheduling Conference had already been set for June 12, 2023.  [Doc. 237].  On May 30, 2023, ARCO filed an *unopposed* Motion to Continue the Scheduling Conference until mid-August 2023, to allow it time to file "a motion under 28 U.S.C. § 1292 for an interlocutory appeal of the Partial Summary Judgment Decision and a concurrent motion to stay all proceedings in this case pending resolution of the 28 U.S.C. § 1292 motion and, if the 28 U.S.C. § 1292 motion is granted, any proceedings in the Tenth Circuit." [Doc. 245 at 2]; *see* [*id.* at 3 ("NL Defendants do not oppose the relief sought in this Motion.")]. ARCO then filed the instant Motion for Interlocutory Appeal one month later, on June 30, 2023. [Doc. 249].

NL argues that ARCO fails to explain why it "waited over two months" after the Court entered the subject Order before seeking certification to appeal it, which, therefore, "makes

ARCO's Motion untimely." [Doc. 251 at 9]. NL also insists that district courts "have repeatedly found that 2 months is too long" to seek interlocutory review of an order, citing cases from outside the Tenth Circuit for support. [*Id.*]. This Court, however, is not bound by any of those cases, and NL cites no authority that would mandate this Court to reach a similar conclusion. *Cf. Schimmer v. State Farm Mut. Auto. Ins. Co.*, No. 05-cv-02513-MSK, 2006 WL 3097768, at *1 (D. Colo. Oct. 31, 2006) (finding that there is "no time limitation on a district court's ability to amend its orders" to include a section 1292(b) certification).

In any event, § 1292(b) provides that, if a district judge concludes that an interlocutory order is properly appealable, "[s]he shall so state in writing in such order." 28 U.S.C. § 1292(b). Even so, "the Tenth Circuit has made clear that a district judge may instead issue a supplemental order certifying a previously issued order for appeal." *Kerr*, 2012 WL 4359076, at *3 (citing *Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962) ("[T]he trial court had the power to supplement the original order to include the § 1292(b) statement.")); *Shire LLC v. Sandoz Inc.*, No. 07-cv-00197-PAB-CBS, 2008 WL 5120728, at *1 (D. Colo. Dec. 5, 2008) ("Where no Section 1292(b) certification is included in the original order, the district court may supplement that order to include an appropriate certification." (citing *Teter*, 313 F.2d at 92)). Similarly, Rule 5 of the Federal Rules of Appellate Procedure provides:

> If a party cannot petition for appeal unless the district court first enters an order granting permission to do so or stating that the necessary conditions are met, the district court may amend its order, either on its own or in response to a party's motion, to include the required permission or statement. In that event, the time to petition runs from entry of the amended order.

Fed. R. App. P. 5(a)(3); *see also Schimmer*, 2006 WL 3097768, at *1 (finding motion seeking relief pursuant to Federal Rule of Appellate Procedure 5(a)(3) and § 1292(b) was timely filed because Rule 5(a)(3) "imposes no time limitation on a district court's ability to amend its orders"

and the non-moving party "cited no binding legal authority which suggests anything to the contrary").

Accordingly, the Motion for Interlocutory Appeal is **GRANTED**, and the Court hereby **AMENDS** and **SUPPLEMENTS** its April 26, 2023, Order to include a finding that it involves controlling questions of law as to which there are substantial grounds for differences of opinion, and an immediate appeal from the April 26, 2023, Order may materially advance the ultimate termination of the litigation. With this supplementation, the April 26, 2023, Order is now appealable. *See Teter*, 313 F.2d at 92 ("When [the trial court supplemented the original order to include the § 1292(b) statement], the order became appealable and the appeal time ran from the entry of the supplemental order.").[14]

### III.    Stay of Proceedings

ARCO also seeks a stay of this case pending resolution of the Motion for Interlocutory Appeal and, if that Motion is granted, "pending any proceedings in the Tenth Circuit." [Doc. 250 at 1]. Section 1292(b) provides that an interlocutory appeal does not stay proceedings in the district court "unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b). "The district court has discretion to determine whether to stay proceedings pending disposition of an interlocutory appeal." *Kerr*, 2012 WL 4359076, at *4 (citations omitted). NL does not oppose the Motion to Stay until resolution of the Motion for Interlocutory

---

[14] Though this Court does not find that the third question identified by ARCO is a "controlling question of law" under § 1292(b), *see* [Doc. 249 at 2], "the scope of review on appeal will be all issues raised in the order." *Kerr*, 2012 WL 4359076, at *1 (citing *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)). Indeed, "[a]s the text of § 1292(b) indicates, appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court." *Calhoun*, 516 U.S. at 205. Therefore, the omission from this Order of any substantive discussion of Plaintiff's third issue has no effect on the ultimate resolution of the Motion for Interlocutory Appeal.

Appeal.  *See* [Doc. 252 at 1].  It is unclear, however, whether or not NL opposes a stay pending resolution of proceedings before the Tenth Circuit.  *See* [*id.*].

Nevertheless, the Court finds that a stay of this case pending resolution of proceedings before the Tenth Circuit is appropriate given that, as previously discussed, the statute-of-limitations issues that ARCO seeks to raise on appeal will likely have a substantial impact on this case—namely, "whether this is an approximately $100 million case or a $400,000 case."  [Doc. 249 at 7].  As ARCO explains, although its two claims in this case "require some different factual proof, there is substantial overlap in the fact and expert analysis and discovery needed to prosecute or defend against them."  [Doc. 250 at 2].  In addition, because NL moved for summary judgment on only part of ARCO's first claim and the Court declined to grant summary judgment on Plaintiff's second claim, ARCO contends that "the Court and the [P]arties are now faced with an inefficient and partially duplicative (if Atlantic Richfield prevails on its interlocutory appeal) pretrial process and trial."  [*Id.* at 3].  Further, "[a]lthough the [P]arties made initial Rule 26(a)(1) disclosures some time ago, they have not conducted any fact or expert discovery."  [*Id.*].  NL does not dispute any of these points.  *See generally* [Doc. 252].

Weighing the relevant factors,[15] the Court finds that a stay of proceedings is appropriate under the circumstances of this case.  *See, e.g.*, *Martinez v. Back Bone Bullies Ltd*, No. 21-cv-

---

[15] When ruling on a motion to stay, courts in this District generally weigh the following factors: (1) the plaintiff's interests in expeditiously litigating this action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.  *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-LTB-PAC, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006).  Additionally, "a court may decide that in a particular case it would be wise to stay discovery on the merits until [certain challenges] have been resolved."  8A Charles Alan Wright et al., *Federal Practice and Procedure* § 2040, at 198 (3d ed. 2010).  Courts in this District generally disfavor the stay of all discovery, *see Wason Ranch Corp. v. Hecla Mining Co.*, No. 07-cv-00267-EWN-MEH, 2007 WL 1655362, at *1 (D. Colo. June 6, 2007), and even where an

01245-MEH, 2022 WL 1027148, at *3 (D. Colo. Apr. 6, 2022) ("[G]iven that the parties have not engaged in substantial discovery, the Court finds that it would preserve the time and resources of both the parties and the Court to stay proceedings."); *Kenney v. Helix TCS, Inc.*, No. 17-cv-01755-CMA-KMT, 2018 WL 722458, at *4 (D. Colo. Feb. 5, 2018) (granting motion to stay discovery pending interlocutory appeal); *Kerr*, 2012 WL 4359076, at *4 (staying all proceedings pending interlocutory appeal where the moving party argued that such appeal "may obviate the need for the lengthy and costly phases of discovery and trial").   Accordingly, the Motion to Stay is **GRANTED**.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)     Plaintiff's Motion for Certification for Interlocutory Appeal Pursuant to 28 U.S.C. Section 1292(b) [Doc. 249] is **GRANTED**;

(2)     This Order of the Court **AMENDS** and **SUPPLEMENTS** the Court's April 26, 2023, Order Granting in Part and Denying in Part Defendant's Renewed Motion for Partial Summary Judgment [Doc. 244];

(3)     The Court **FINDS** that its April 26, 2023, Order involves controlling questions of law as to which there are substantial grounds for differences of opinion, and an immediate appeal from the Order may materially advance the ultimate termination of the litigation;

(4)     The Court's April 26, 2023, Order, as supplemented by this Order, is **CERTIFIED** for interlocutory appeal under 28 U.S.C. § 1292(b);

---

appeal is pending, a stay "is not a matter of right, even if irreparable injury might otherwise result to the appellant."  *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citation omitted).

(5)      Plaintiff's Motion for Stay [Doc. 250] is **GRANTED**;

(6)      This action is **STAYED** until either the time to file an interlocutory appeal under § 1292(b) expires or such time as the appeal is fully and finally resolved and the action is remanded to the Court;[16]

(7)      The Joint Stipulated Motion to Vacate Scheduling Conference Pending Decisions Re Interlocutory Appeal [Doc. 256] is **GRANTED**, and the Scheduling Conference set for September 6, 2023, is hereby **VACATED**; and

(8)      The Parties shall **JOINTLY FILE** a Status Report with the Court every sixty (60) days from the date of this Order, informing the Court as to the progress of any appeal.

DATED: August 18, 2023                         BY THE COURT:

                                               Nina Y. Wang
                                               United States District Judge

---

[16] Should the Tenth Circuit, in its discretion, permit the appeal of the Court's April 26, 2023 Order, this Court will administratively close this case pending the outcome of the appeal. *See Quinn v. CGR*, 828 F.2d 1463, 1465 n.2 (10th Cir. 1987) (construing an administrative closure to be the practical equivalent of a stay).