IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 20-cv-00234-NYW-KAS

ATLANTIC RICHFIELD COMPANY,

    Plaintiff,

v.

NL INDUSTRIES, INC., and
NL ENVIRONMENTAL MANAGEMENT SERVICES,

    Defendants.

## ORDER GRANTING LEAVE TO FILE THIRD-PARTY COMPLAINT

This matter is before the Court on Defendants' Motion for Leave to File and Serve Third-Party Complaint ("Motion"). [Doc. 285]. Plaintiff Atlantic Richfield Company ("Plaintiff" or "ARCO") has responded in opposition. [Doc. 286]. Defendants NL Industries, Inc. and NL Environmental Management Services (collectively, "Defendants" or "NL") have replied. [Doc. 287]. For the reasons set forth below, the Motion is respectfully **GRANTED**.

### BACKGROUND

The Court has previously set out the background of this case in detail, [Doc. 244 at 1–5, 10–16], and repeats it here only as pertinent to the instant Motion. ARCO brings this suit to recoup a portion of the environmental cleanup costs for a former mining site in Rico, Colorado (the "Rico-Argentine Site"). [*Id.* at 2–4]. *See generally* [Doc. 171]. ARCO

seeks to impose CERCLA[1] liability on NL based on NL's predecessors' alleged mining activities at the Rico-Argentine Site. [Doc. 171 at ¶¶ 15–16, 43–47]. The alleged predecessors include Rico Mining and Reduction Company ("RMRC") and St. Louis Smelting and Refining Co. ("St. Louis"). See [id.].

NL initially brought third-party claims against a number of other entities, including El Paso Remediation Company ("El Paso"). See [Doc. 172]. Those claims were dismissed before the Court issued its summary-judgment ruling. [Doc. 236; Doc. 242]. The Court then granted partial summary judgment to NL, [Doc. 244], and the Tenth Circuit reversed, [Doc. 272; Doc. 277]. On remand, the Parties agreed in the Third Amended Scheduling Order that the deadline for joinder of parties and amendment of pleadings has passed. [Doc. 282 at 19].

NL now seeks to assert new third-party claims against El Paso. See [Doc. 285]. NL claims that in 1940, El Paso's predecessor—Rico Argentine Mining Company ("RAMCO")—entered into a lease agreement (the "1940 Lease Agreement") with St. Louis, NL's predecessor. [Id. at 4]. The 1940 Lease Agreement entitled RAMCO to "prospect[] and develop[]" a mineshaft at the Rico-Argentine Site. [Id.]; see also [Doc. 285-2 at 6 ¶ 1]. The agreement also contains an indemnity provision, in which RAMCO agreed "to protect and indemnify [St. Louis] and save it and its property harmless from any and all loss, liability and claims whatsoever for damage . . . resulting directly or indirectly from the operations of [RAMCO] on said property." [Doc. 285 at 4; Doc. 285-2 at 7 ¶ 16]. NL alleges that ARCO's claims against NL result from RAMCO's operations

---

[1] CERCLA refers to the Comprehensive Environmental, Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601–9675.

2

at the Rico-Argentine Site. *See, e.g.*, [Doc. 285-1 at ¶ 13]. And because the agreement also applies to St. Louis and RAMCO's "successors and assigns," [Doc. 285-2 at 7 ¶ 21], NL contends that it may now assert the indemnity provision against El Paso.

ARCO opposes, arguing that NL has not established good cause under Rule 16(b)(4), and that the Court should not permit NL to add new third-party claims under Rule 15(a). [Doc. 286 at 5–15]; Fed. R. Civ. P. 15(a), 16(b)(4). ARCO also asks the Court to decline supplemental jurisdiction over NL's proposed third-party claim. [Doc. 286 at 15–16].

## LEGAL STANDARDS

### I. Rule 16(b)(4)

To amend a pleading or join a party after the deadline for doing so has passed, the moving party must demonstrate good cause under Rule 16(b)(4). Fed. R. Civ. P. 16(b)(4); *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1242 (10th Cir. 2014). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch*, 771 F.3d at 1240 (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). "'Good cause' is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (quotation and brackets omitted). The district court possesses "considerable discretion" in determining whether good cause exists under Rule 16(b)(4). *Id.*

3

**II.      Rule 15(a)(2)**

Under Rule 15(a), the Court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A general presumption exists in favor of allowing a party to amend its pleadings, see *Foman v. Davis*, 371 U.S. 178, 182 (1962), and the non-movant bears the burden of showing that the proposed amendment is improper, *Openwater Safety IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1151 (D. Colo. 2020).  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quotation omitted).  Whether to allow amendment is within the trial court's discretion.  *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978–79 (10th Cir. 1996).

**III.     Supplemental Jurisdiction**

Federal courts exercise supplemental jurisdiction over state law claims when the state claims "form part of the same case or controversy" as federal claims. 28 U.S.C. § 1367(a).  But supplemental jurisdiction "need not be exercised in every case in which it is found to exist."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  In other words, "supplemental jurisdiction is not a matter of the litigants' right, but of judicial discretion."  *Est. of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004) (citations omitted).

The Court may decline supplemental jurisdiction if, inter alia, a state claim "substantially predominates over the claim or claims over which the district court has original jurisdiction."  § 1367(c)(2).  In *Gibbs*, the Supreme Court observed that state

4

claims may predominate "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." 383 U.S. at 726–27. Thus, courts evaluating whether to decline supplemental jurisdiction under § 1367(c)(2) may consider

> (1) whether there is a substantial quantity of evidence needed to support the state claims that is not relevant to the federal claims; (2) whether the state claims predominate substantially in terms of the comprehensiveness of the remedy sought; and (3) whether the scope of the issues raised in the state claims shows that those issues predominate over the issues relevant to the federal claims.

*Arc of the Pikes Peak Region v. Nat'l Mentor Holdings, Inc.*, No. 10-cv-01144-REB-BNB, 2011 WL 1047222, at *3 (D. Colo. Mar. 18, 2011) (citing *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 789 (3rd Cir. 1995)).

## IV.  Rule 14(a)(1)

Although the Parties do not address Rule 14 in their briefing, the Court finds it appropriate to consider whether NL's request to file a third-party complaint is justified under Rule 14. This rule permits a defendant to file a third-party complaint against "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). If a defendant does not serve a third-party complaint within fourteen days serving its original answer, it must secure leave of court to do so. *Id*.

Rule 14 is designed to resolve disputes consistently and efficiently by "settl[ing] related matters in one litigation as far as possible." *Patter v. Knutzen*, 646 F. Supp. 427, 429 (D. Colo. 1986). "Rule 14(a) should be liberally construed to accomplish its purpose but it is not a catchall for independent litigation." *U.S. Fid. & Guar. Co. v. Perkins*, 388 F.2d 771, 773 (10th Cir. 1968). To be proper, a third-party complaint must depend, at least in part, on the resolution of the primary lawsuit. *Maxfour Eng'rs & Architects, LLC v. ARB, Inc.*, 233 F.R.D. 602, 605 (D. Colo. 2006) (citing *Owen Equip. & Erection Co. v.*

5

*Kroger*, 437 U.S. 365, 376 (1978)).  Courts "freely grant[]" leave to file a third-party complaint "unless doing so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim."  *Hinton v. 4871 Broadway, Inc.*, No. 19-cv-00467-RM-SKC, 2019 WL 2865380, at *2 (D. Colo. July 3, 2019) (quotation omitted).  The determination to grant leave to file a third-party complaint lies within the sound discretion of the district court.  *See First Nat'l Bank of Nocona v. Duncan Sav. & Loan Ass'n*, 957 F.2d 775, 777 (10th Cir. 1992).

## ANALYSIS

The Court begins by considering the Parties' arguments under Rules 16 and 15, before turning to ARCO's request that the Court decline supplemental jurisdiction over NL's proposed third-party complaint.  The Court then addresses whether the proposed third-party complaint satisfies Rule 14.

### I.   Good Cause Exists Under Rule 16(b)(4)

NL argues that good cause exists because it only learned of the 1940 Lease Agreement through discovery and promptly filed the instant Motion approximately three weeks later.  [Doc. 285 at 13–14].  ARCO counters that the 1940 Lease Agreement was publicly available in Dolores County property records and that NL failed to exercise reasonable diligence by not conducting its own title search regarding NL's predecessors' activities at the Rico-Argentine Site.  [Doc. 286 at 6–8].  NL replies that Dolores County's historical property records are not available online, and it should not be required to have hired a title search company in order to demonstrate reasonable diligence.  [Doc. 287 at 3–6].  NL contends that it had already acted diligently by searching its own records and

6

submitting a "detailed FOIA request to the EPA" that yielded almost 65,000 pages of records. [*Id.* at 6]. The Court respectfully agrees with NL.

The good cause standard does not demand perfection; that a party was reasonably or "generally diligent" is ordinarily sufficient. *Tesone*, 942 F.3d at 988; *see also Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1021 (10th Cir. 2018) (affirming denial of motion to amend where party failed to "act with reasonable diligence in unearthing . . . the ostensibly newly discovered evidence" (quotation omitted)). Nor does reasonable diligence "require a plaintiff to exhaust all possible avenues of inquiry." *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 255 (3d Cir. 2001) (discussing reasonable due diligence in context of claim accrual date for fraud claims). To be sure, performing a title search regarding the Rico-Argentine Site might have been one way of exercising reasonable diligence. The Court cannot conclude, however, that reasonable diligence *required* a title search in this case, as ARCO suggests. *See* [Doc. 286 at 7]. As NL points out, it had every incentive to find and raise the 1940 Lease Agreement. [Doc. 287 at 8]. But Dolores County's historical property records are not available online, [Doc. 287-1 at ¶¶ 5–6], so the title search would have involved paper records of deeds, leases, and mining claims spanning over a century. Instead, NL elected to pursue information regarding its predecessors' operations at the Rico-Argentine Site by searching its own records and obtaining voluminous additional records from the EPA. NL evidently believed that those searches would turn up all relevant documents. The fact that NL was incorrect—and failed to pursue other avenues that, in hindsight, would have revealed a

7

specific 85-year-old document—does not mean that NL failed to exercise reasonable diligence.

Similarly, the Court respectfully disagrees with ARCO's position that a party can never demonstrate good cause "based on purportedly newly discovered information that, in fact, was publicly available long before the party sought to assert the new claim." [Doc. 286 at 6–7]. It is true that, in many cases, a party exercising reasonable diligence will uncover relevant public documents. *See, e.g.*, *Overhead Sols., Inc. v. A1 Garage Door Serv., L.L.C.*, No. 19-cv-01741-PAB-NYW, 2021 WL 4046408, at *5 (D. Colo. May 5, 2021) (finding that plaintiff did not act diligently by failing to locate relevant filings available on government website), *recommendation adopted*, 2021 WL 3732764 (D. Colo. Aug. 24, 2021). But the facts of this case—including the difficulty in obtaining the 1940 Lease Agreement; the volume and complexity of the records documenting the long history of ownership and operations at the Rico-Argentine Site; and NL's reasonable efforts to investigate its predecessors' activities at the site—exemplify why a categorical rule is undesirable. In its discretion, the Court concludes that NL has established good cause based on newly discovered information to satisfy Rule 16(b)(4) in this instance.

## II.     Rule 15(a) Does Not Bar NL's Third-Party Claims

As an initial matter, the Court notes that it is unclear why the Parties focus on Rule 15(a), rather than Rule 14(a), as providing the second step of the analysis after Rule 16(b)(4). At times, the Parties' briefing implies that they view NL's proposed third-party complaint as a constructive amendment to NL's Answer, [Doc. 172]. *See* [Doc. 285 at

14–15; Doc. 286 at 8–12]. Assuming without deciding that Rule 15(a) applies, the Court finds that NL has also satisfied Rule 15(a).

**Undue Delay.** First, ARCO argues that NL's proposed third-party complaint should be denied for undue delay, because the 1940 Lease Agreement was publicly available and NL simply failed to find it. [Doc. 286 at 8–10]. There is a "rough similarity" between this standard and Rule 16(b)'s "good cause" standard. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006). As discussed above, NL has established good cause based on its failure to locate the 1940 Lease Agreement despite reasonable diligence. And because NL filed the instant Motion within three weeks of obtaining the 1940 Lease Agreement, [Doc. 285 at 14], the Court concludes that NL did not unduly delay in seeking to assert its proposed third-party claims, *see, e.g.*, *Willis v. Johnson*, No. 18-cv-00323-D, 2021 WL 8527621, at *2 (W.D. Okla. May 20, 2021) ("[A] one month delay in preparing the motion to amend is not undue delay for purposes of denying leave to amend.").

**Prejudice.** Second, ARCO contends it would be prejudiced by NL's assertion of third-party claims against El Paso. [Doc. 286 at 10–12]. ARCO argues that NL's proposed claims would inject new issues into the litigation, unfairly delay the case, and may subject ARCO to additional discovery from El Paso. [*Id.*]. NL replies that the proposed claims are not against ARCO and are "directly intertwined with the underlying CERCLA claims." [Doc. 287 at 9].

Prejudice is the "most important[] factor" in deciding a motion to amend. *Minter*, 451 F.3d at 1207. Prejudice typically arises "only when the amendment unfairly affects the [non-movants] in terms of preparing their defense to the amendment." *Id.* at 1208

9

(quotation omitted). An amendment may be difficult to defend against if "the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* However, courts applying Rule 15 distinguish undue prejudice from mere inconvenience. *See Bylin*, 568 F.3d at 1230 ("[T]he expenditure of time, money, and effort alone is not grounds for a finding of prejudice."); *Philippus v. Aetna Health, Inc.*, No. 07-cv-02682-JLK-KLM, 2010 WL 148282, at *4 (D. Colo. Jan. 8, 2010) ("The need for additional discovery does not by itself establish undue prejudice."). "While any amendment invariably causes some practical prejudice, undue prejudice means that the amendment would work an injustice to the [non-movant]." *Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1168 (D. Kan. 2018) (cleaned up).

The Court is respectfully unpersuaded that ARCO will be unduly prejudiced by NL's proposed third-party claims. The proposed claims are against El Paso, not ARCO. Nor does ARCO suggest that permitting NL to assert its third-party claims would somehow prejudice ARCO's ability to build a case for its own claims. Discovery remains ongoing, *see* [Doc. 282 at 19]; no dispositive motions have been filed since the case was remanded to this Court; and trial has not yet been set. ARCO's theories about El Paso's possible litigation strategies are speculative and demonstrate inconvenience rather than injustice. *See* [Doc. 286 at 11 (positing that El Paso could seek a stay of discovery pending resolution of a hypothetical motion to dismiss against NL)]. And the Court agrees with NL that the core fact issues presented by the new claims—i.e., which entities are responsible for which portions of the environmental damage at the Rico-Argentine Site—are closely related to the issues presented by ARCO's CERCLA claims. Particularly given the Parties' recent request to extend discovery, [Doc. 289], and the Order granting that

request, [Doc. 291], the Court finds no undue prejudice to ARCO under Rule 15(a),[2] *see, e.g.*, *SMHG Phase I LLC v. Eisenberg*, No. 1:22-cv-00035-DBB-JCB, 2023 WL 3821132, at *4–5 (D. Utah June 6, 2023) (finding no prejudice to plaintiff where discovery was ongoing and defendant's proposed third-party claims shared a "common core of facts" with existing claims).

**Futility.**   ARCO also argues NL's proposed claims against El Paso are futile because they are unripe and seek indemnity beyond the scope of the 1940 Lease Agreement. [Doc. 286 at 12–15]. Unsurprisingly, NL reads the 1940 Lease Agreement differently. [Doc. 287 at 9–11]. The Court respectfully finds that this is not the appropriate procedural posture to ascertain the proper interpretation of the 1940 Lease Agreement.

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Id.* But where a complaint is not "patently futile on its face," courts in this District are disinclined to deny a motion to amend on futility grounds. *See, e.g.*, *Combs v. Nordstrom, Inc.*, No. 22-cv-00150-RMR-NRN, 2022 WL 2865985, at *4 (D. Colo. July 21, 2022), *objection overruled*, 2022 WL 17534122 (D. Colo. Aug 17, 2022); *Electro-Mechanical Prods., Inc. v. Alan Lupton Assocs.*, No. 22-cv-00763-PAB-SBP, 2023 WL 5152627, at *3 (D. Colo. July 10, 2023) ("Denying a motion to amend based on futility is uncommon in this District and usually involves claims that are facially unsupported in the proposed amendment."). "Rather than force a Rule 12(b)(6) motion

---

[2] To the extent that the Parties or El Paso determines it requires additional time for discovery, the Court trusts that they will meet and confer and seek appropriate relief.

into a Rule 15(a) opposition brief," courts routinely exercise their discretion under Rule 15(a) to permit amendment over a futility argument and reserve substantive issues for Rule 12 or Rule 56 motions.  *See, e.g.*, *Gen. Steel Domestic Sales, LLC v. Steelwise, LLC*, No. 07-cv-01145-DME-KMT, 2008 WL 2520423, at *4 (D. Colo. June 20, 2008) (Ebel, J.); *Pollack v. Boulder Cnty.*, No. 17-cv-02444-CMA-NRN, 2019 WL 1292858, at *4–5 (D. Colo. Mar. 21, 2019); *Faircloth v. Hickenlooper*, No. 18-cv-01249-RM-STV, 2019 WL 1002935, at *3 (D. Colo. Mar. 1, 2019).  Considerations of judicial economy often favor reserving issues of futility so the Parties can fully brief the substantive legal issues. *Stender v. Cardwell*, No. 07-cv-02503-WJM-MJW, 2011 WL 1235414, at *3 (D. Colo. Apr. 1, 2011) (declining to reach futility arguments in order to "preserv[e] [the court's] scarce resources").

Upon review, the Court finds that NL's proposed third-party claims are not so patently futile that they should be rejected outright.  Moreover, ARCO does not explain how it has standing to assert contractual arguments on El Paso's behalf.  And judicial economy considerations counsel against attempting to resolve the scope of the 1940 Lease Agreement's indemnity provision at this stage.  *See* Fed. R. Civ. P. 1.  El Paso has not yet weighed in, and NL has only addressed the merits of its proposed claims in a reply brief.  *See Combs*, 2022 WL 2865985, at *4 (observing that it would be fairer to permit party seeking amendment to "fully brief the viability of [its] claim . . . in the context of responding to a formal motion to dismiss, rather than addressing this dispositive question in the context of a motion to amend").  The Court thus finds it preferable to reserve a

ruling on NL's proposed claims for a Rule 12 or Rule 56 motion, where El Paso (and NL, if appropriate) can fully brief the substantive legal issues.

In sum, the Court finds no undue delay, prejudice, or futility under Rule 15(a) that would warrant denying NL leave to file its proposed third-party complaint.

### III. Supplemental Jurisdiction Is Appropriate

ARCO next urges the Court to decline supplemental jurisdiction under 28 U.S.C. § 1367(c) because the issues presented by NL's proposed third-party claims would substantially predominate over ARCO's CERCLA claims. [Doc. 286 at 16–17]. ARCO asserts that "in CERCLA matters, courts decline to exercise supplemental jurisdiction over state-law claims where the evidence required to prove the CERCLA claims differs from that required to prove the state-law claims." [*Id.* at 16 (first citing *Mathews v. Dow Chem. Co.*, 947 F. Supp. 1517, 1522 (D. Colo. 1996); and then citing *Polger v. Republic Nat'l Bank*, 709 F. Supp. 204, 210 (D. Colo. 1989))]. NL counters that the "indemnity claim arises from the same set of facts and site operations as the CERCLA claims, and judicial economy is best served by resolving all related disputes in one forum." [Doc. 287 at 11].

The Court respectfully agrees with NL. As explained above, the central fact issues presented by NL's third-party claims coincide with the fact issues presented by the CERCLA claims. Although there may be unique legal issues as to the 1940 Lease Agreement, the Court does not conclude that the indemnity claim will predominate over the CERCLA claims. The cases cited by ARCO are distinguishable on this point. In *Mathews*, the district court declined supplemental jurisdiction over the plaintiffs' negligence and trespass claims where the elements of proof, available damages, and

13

possible defenses would all substantially differ from the CERCLA claims. 947 F. Supp. at 1522. The *Polger* court similarly declined jurisdiction where the "nature of the proof" for the state tort claims was "vastly different" and "would require much more extensive evidence at trial than the CERCLA claim." 709 F. Supp. at 210. Here, crediting NL's description of its claims, El Paso's liability under the 1940 Lease Agreement will flow from NL's liability under the CERCLA claims, plus NL's litigation costs. [Doc. 287 at 10–11]. There is no indication that interpreting the 1940 Lease Agreement or calculating El Paso's liability (if any) would require a "substantial quantity of evidence needed to support the state claims that is not relevant to the federal claims." *Arc of the Pikes Peak Region*, 2011 WL 1047222, at *3. Accordingly, the Court concludes that an exercise of supplemental jurisdiction over NL's proposed third-party claims is appropriate.

## IV. Filing the Third-Party Complaint Is Appropriate Under Rule 14(a)

Finally, the Court considers whether permitting NL to assert its third-party claims is appropriate under Rule 14(a). NL's third-party claims seek indemnification for its potential liability on ARCO's CERCLA claims. The proposed claims thus depend at least partly on the resolution of the primary lawsuit. *Maxfour*, 233 F.R.D. at 605 (citation omitted); *see also Fid. State Bank of Garden City v. McNeilus Truck & Mfg. Inc.*, No. 96-cv-01253-JTM, 1997 WL 446422, at *3 (D. Kan. July 8, 1997) ("Third party claims based on indemnification clearly are proper under Rule 14(a)."). And, as explained, NL's proposed claims would not unduly prejudice ARCO, would not predominate over the primary CERCLA claims, and are not patently futile. *See Hinton*, 2019 WL 2865380, at

14

\*2.  The Court respectfully concludes that NL should be granted leave to file and serve its third-party complaint.  The Motion is **GRANTED**.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Defendants' Motion for Leave to File and Serve Third-Party Complaint [Doc. 285] is **GRANTED**;

(2) The Clerk of Court is **DIRECTED** to docket the proposed Third-Party Complaint [Doc. 285-1] as NL Industries, Inc. and NL Environmental Management Services' Third-Party Complaint; and

(3) Defendants shall **SERVE** a summons and a copy of the Third-Party Complaint on El Paso Remediation Company within fourteen days of this Order.

DATED:  February 26, 2026

BY THE COURT:

_____
Nina Y. Wang
United States District Judge