**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-00234-NYW-KAS

| | |
|---|---|
| ATLANTIC RICHFIELD COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NLI HOLDINGS, INC., as successor by merger to NL INDUSTRIES, INC. and NL ENVIRONMENTAL MANAGEMENT SERVICES, | ) ) ) ) |
| | ) |
| Defendants/Third-Party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| EL PASO REMEDIATION COMPANY, | ) |
| | ) |
| Third-Party Defendant. | ) |
| | ) |

---

**NLI HOLDINGS, INC. AND NL ENVIRONMENTAL MANAGEMENT SERVICES' MOTION UNDER FED. R. CIV. P. 56(d) TO DEFER CONSIDERATION OF, OR DENY WITHOUT PREJUDICE, EL PASO REMEDIATION COMPANY'S MOTION TO DISMISS IF THE COURT CONSIDERS MATTERS OUTSIDE THE PLEADINGS**

---

Defendants/Third-Party Plaintiffs NLI Holdings, Inc., as successor by merger to NL Industries, Inc. ("NLIH") and NL Environmental Management Services ("NL EMS") ("NLIH" and "NL EMS" collectively "NLIH")  respectfully move under Federal Rule of Civil Procedure 56(d) for an order deferring consideration of, or denying without prejudice, Third-Party Defendant El Paso Remediation Company's ("El Paso") Motion to Dismiss the First Amended Third-Party Complaint to the extent the Court considers matters outside the pleadings and therefore treats El Paso's motion as one for summary judgment. El Paso's motion is captioned as a Rule 12(b)(6) motion, but its dispositive theory depends on treating

1

post-complaint statements by ARCO as substantive proof that ARCO's operative claim has been permanently narrowed. This motion is supported by the accompanying Declaration of Joel Herz, the record in this action, and the grounds set forth below.

El Paso's motion is styled as a Rule 12(b)(6) motion, but NLIH's opposition demonstrates that El Paso relies on materials outside the pleadings—including later ARCO briefing, a case-management position statement or letter, and statements made by ARCO's counsel at the April 24, 2026 discovery hearing—to argue that ARCO has waived or disclaimed any attempt to impose on NLIH liability attributable to RAMCO/El Paso's operations and that NLIH therefore can have no viable claim for defense costs, protection, hold-harmless relief, or indemnity under the 1940 and 1941 agreements. If the Court considers those materials for the truth of the matters asserted, Rule 12(d) requires conversion, and Rule 56(d) entitles NLIH to a reasonable opportunity to obtain discovery necessary to oppose that converted motion.

## Relief Requested

NLIH respectfully requests that, if the Court considers matters outside the pleadings in connection with El Paso's motion, the Court enter an order:

1. Treating El Paso's motion as one for summary judgment under Rules 12(d) and 56;

2. Deferring consideration of, or denying without prejudice, El Paso's motion under Rule 56(d);

3. Permitting limited, targeted discovery on the issues identified below;

4. Setting a schedule allowing completion of that discovery within 90 days, or such other period as the Court deems appropriate; and

5. Allowing NLIH to file a supplemental opposition within 21 days after completion of that limited discovery.

## Background

El Paso via its predecessor, Rico Argentine Mining Company ("RAMCO"), made a deal. For decades, its predecessor mined the Argentine Workings, including under two

lease agreements that expressly required it to insure, protect, indemnify, and save harmless NLIH[1] from any and all claims arising—directly or indirectly—from its operations. Plaintiff Atlantic Richfield Company's ("ARCO") $60-million-plus First Amended Complaint (ECF 171) (hereinafter the "ARCO Complaint") is exactly the claim those agreements were designed to address. El Paso cannot escape that bargain with a Rule 12(b)(6) motion.

NLIH's First Amended Third-Party Complaint (ECF 297) (hereinafter the "NLIH Complaint")  plausibly alleges claims for breach of contract and declaratory relief under both the September 12, 1940 Lease Agreement (the "1940 Agreement") and the October 1, 1941 Lease Agreement (the "1941 Agreement") (the 1940 Agreement and the 1941 Agreement, hereinafter collectively the "El Paso Agreements") that El Paso via its predecessor, RAMCO, agreed to.

In the 1940 Agreement, El Paso agreed to "insure and agree to protect and indemnify" St. Louis[2] [NLIH] and "save it and its property harmless." *See* ECF 297, Exhibit 1, 1940 Agreement at ¶ 16.  In the 1941 Agreement, El Paso agreed to "settle and satisfy any and all claims" and to "insure and agree to save" St. Louis [NLIH] harmless from those claims or demands.  *See* ECF 297, Exhibit 6, 1941 Agreement at ¶ Eleventh.

The 1940 Agreement is not limited to a narrow after-the-fact indemnity. Paragraph 16 states in full:

> "Mining Company [RAMCO/El Paso] **does hereby _insure_ and agree to protect** and indemnify Smelting Company [St. Louis/NL] and **save it and its property harmless from any and all loss, liability and claims whatsoever** for damage to property or injury to persons or rights of others <u>**resulting directly or indirectly from the operations of Mining Company on said property**</u>."

*See* ECF 297, Exhibit 1, 1940 Agreement at ¶ 16. (emphasis added)

---

[1] NL Industries, Inc. is now NLI Holdings, Inc., a Delaware corporation, as a result of a merger.

[2] In submitting this Motion, NLIH in no way admits or concedes that is has assumed any liabilities of St. Louis.

As set forth in the NLIH Complaint, El Paso, as RAMCO's successor, is bound by those obligations. *See* ECF 297, NLIH Complaint at ¶ 11.

The above language is important for several reasons. First, RAMCO [El Paso] did not merely agree to indemnify St. Louis [NLIH] after liability was fixed. It separately promised to "insure," to "protect," to "indemnify," and to "save ... harmless." *See* ECF 297, Exhibit 1, 1940 Agreement at ¶ 16. Each of those verbs carries independent significance, and together they show a broad risk-allocation clause designed to shift to RAMCO/El Paso the burden of claims and liabilities arising directly **or indirectly** from its operations. *See* ECF 297, NLIH Complaint at ¶ 58.

Second, the phrase "any and all loss, liability and claims whatsoever" is expansive on its face. *See* ECF 297, Exhibit 1, 1940 Agreement at ¶ 16. It is not limited to final judgments, nor is it limited to damages proven after trial. It encompasses liabilities and claims resulting directly **or indirectly** from RAMCO/El Paso's operations. In ordinary contract usage, an agreement to "save harmless" and "protect" another party from "loss, liability and claims" naturally includes the obligation to shield the promisee from having to bear and defend against such claims in the first place, not merely to reimburse at the end, and not wait until after a trial verdict.

Third, the obligation is expressly tied to operations conducted "directly or indirectly" on the leased property. *See* ECF 297, Exhibit 1, 1940 Agreement at ¶ 16. That breadth matters here because ARCO's claims arise directly or indirectly from RAMCO's operations at and through the Argentine Shaft and associated levels, including the extension of underground workings that increased the area from which drainage was generated and transported to the St. Louis Tunnel. The 1940 Agreement language maps directly onto the factual causation disputes already embedded in ARCO's CERCLA claims against NLIH.

The 1940 Agreement also shows why RAMCO's obligations cannot be isolated from the physical history of the Site. Under Paragraph 1, St. Louis granted RAMCO the exclusive right to use the Argentine Shaft, "with its levels, headframe and appurtenances, for the

prospecting and development of the properties of Mining Company." *See* ECF 297, Exhibit 1, 1940 Agreement at ¶ 1. Paragraph 3 then contemplated that RAMCO would be "extending the underground workings on the properties belonging to Smelting Company for the purpose of giving access, through said shaft and underground levels, to the properties of Mining Company." *Id.* at ¶ 3. Thus, the same 1940 Agreement that created the broad insurance/protect/indemnify/save-harmless obligation also expressly authorized the physical extension and use of interconnected workings that now sit at the center of ARCO's CERCLA allegations.

Finally, paragraph 21 provides that, except as restricted, the agreement "shall benefit and bind the parties hereto, as well as their respective successors and assigns." *Id.* at ¶ 21.   NLIH is entitled to the benefits of the lease as St. Louis's successor or assignee and El Paso, as RAMCO's successor by merger, is bound by its obligations. Because the operative clause extends beyond indemnity and includes insurance, protection, and hold-harmless language, El Paso's duty is correspondingly broader than a simple reimbursement obligation.

The 1941 Agreement reinforces and expands RAMCO's obligations. As alleged in the NLIH Complaint, the 1941 Agreement required RAMCO to "**settle and satisfy any and all claims** for injuries and damages to property **<u>by reason of any and all things done by Mining Company [RAMCO] hereunder</u>**." *See* ECF 297, NLIH Complaint at ¶ 50; *see also* Exhibit 6, 1941 Agreement at paragraph Eleventh. (emphasis added) It further provided that RAMCO/El Paso also agreed to "insure and agree to save Smelting Company [St. Louis/NL] harmless from any and all such claims or demands." *Id.*

That language, too, goes beyond traditional indemnity. An agreement to "settle and satisfy any and all claims" speaks directly to the handling and resolution of claims themselves from the outset, not merely reimbursement after the fact. Likewise, the agreement to "insure" and "save ... harmless" from "any and all such claims or demands"

confirms that RAMCO/El Paso accepted responsibility to shield St. Louis/NLIH from the burdens of those claims, including the burden of responding to them.

The 1941 Agreement also expanded the property covered by RAMCO/El Paso's obligations. The 1941 Agreement expanded RAMCO/El Paso's obligations to include the Argentine Patented Lode Mining Claim and the Humboldt Patented Lode Mining Claim. *See* ECF 297, NLIH Complaint at ⁋ 51; *see also* Exhibit 6, 1941 Agreement, at paragraph First. That expansion matters because the present EPA and ARCO response work concerns a physically connected underground network involving the Argentine workings, the St. Louis Tunnel, the Blaine/Humboldt connection, and related flow paths identified in both the mine maps and later EPA remedial reports. *See* ECF 171, ARCO Complaint at ¶¶ 23-30.

On March 25, 2026, NLIH tendered ARCO's First Amended Complaint to El Paso for defense and indemnity pursuant to the 1941 Agreement. *See* ECF 297, NLIH Complaint at ¶ 52. El Paso failed to honor that tender. *Id.* at ¶ 53.

Read together, the El Paso Agreements show a layered and comprehensive assumption of risk by RAMCO/El Paso. The combined language is broader than mere indemnity in at least four respects. First, it expressly imposes insurance obligations. Second, it expressly requires protection and hold-harmless obligations. Third, it expressly requires RAMCO/El Paso to settle and satisfy claims, which is functionally distinct from reimbursing a judgment after trial. Fourth, the repeated focus on "claims," "demands," "loss," and "liability" shows that the parties allocated responsibility at the claim stage, not only after adjudication.

ARCO's Complaint is not pleaded as a narrowly tailored request to recover only those response costs attributable to NLIH's own alleged historical conduct. Instead, ARCO's Complaint seeks a money judgment and declaratory relief requiring NLIH to pay an "equitably allocated share" of all response costs that ARCO has incurred or will incur to perform the EPA-mandated Removal Action at the St. Louis Tunnel system and connected

workings, as defined by the unilateral administrative order issued by the United States Environmental Protection Agency ("EPA") in March 2011 (the "UAO") and the December 6, 2021 Administrative Settlement Agreement and Order on Consent for Removal Action entered into between ARCO and EPA (the "AOC"). *See* ECF 171, ARCO Complaint at ¶ 50. Because the ARCO Complaint defines the cost pool by reference to the full Removal Action and the full set of facilities rather than by reference to NLIH's own conduct, it directly seeks that NLIH bear costs attributable to non-parties, including RAMCO and RAMCO's activities under the El Paso Agreements. *Id.*

That point matters because CERCLA contribution under § 113(f) is an equitable allocation regime under which courts may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.

El Paso nevertheless argues that NLIH's claims fail as a matter of law because ARCO allegedly has disclaimed any effort to hold NLIH liable for damages attributable to El Paso's predecessor. But that argument depends on materials outside the pleadings. As NLIH's opposition explains, El Paso relies on ARCO's later advocacy statements, not merely to establish that those statements were made, but to prove the truth of the underlying propositions that ARCO's claim is and will remain limited to NLIH-predecessor conduct, that no allocation in this action can ever implicate RAMCO/El Paso-related costs, and that any contrary position has been conclusively waived.

## **ARGUMENT**

### I.  **Rule 56(d) applies if the Court considers El Paso's extra-pleading materials.**

Rule 12(d) provides that if, on a Rule 12(b)(6) motion, matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56. NLIH's opposition explains that this principle applies here because El Paso's motion relies on ARCO's prior briefing, a case-management filing, and hearing statements that are not incorporated into NLIH's pleading, are not operative

documents forming the basis of NLIH's contract claims, and are offered for the truth of contested factual propositions.

Once the Court considers those materials for that purpose, the Rule 12 label falls away, and El Paso is left asking for an early merits ruling on a factual record NLIH has had no fair opportunity to test. That is especially true because El Paso seeks a dispositive ruling on disputed issues of waiver, claim scope, indemnity trigger, and defense-cost exposure. NLIH's opposition explains that such issues cannot properly be resolved at the Rule 12 stage through judicial notice.

Rule 56(d) exists to ensure that a nonmovant is not forced to respond to summary-judgment-style arguments without access to facts essential to justify its opposition. If conversion occurs here, NLIH is entitled to targeted discovery before any Rule 56 determination is made.

## II.  NLIH cannot present facts essential to oppose a converted Rule 56 motion without targeted discovery.

The accompanying declaration explains in detail why NLIH cannot presently present facts essential to justify its opposition to El Paso's converted Rule 56 position. In short, the factual premises on which El Paso relies involve information uniquely or primarily within the possession of ARCO and El Paso, including ARCO's actual cost-allocation theories, the intended scope and permanence of ARCO's supposed disclaimer, El Paso's knowledge of RAMCO's historical operations, and the relationship between those operations and the response costs at issue in ARCO's broad pleaded Removal Action.

NLIH's opposition already shows why those facts matter. It explains that ARCO's pleaded cost pool is broad, that the complaint defines the relevant facilities and removal action at a system-wide level, that costs may be allocated equitably under CERCLA, and that El Paso's argument assumes a factual narrowing of ARCO's claim that is not found on the face of ARCO's operative complaint. NLIH's opposition also explains that no allocation

has yet occurred and that El Paso's premise therefore rests on factual assumptions, not established adjudicative facts.

The same is true of El Paso's theory that NLIH's defense-cost and contract claims fail "*ab initio*." El Paso's motion assumes that ARCO's post-complaint statements eliminate any possibility that NLIH may face claims or liabilities within the scope of the lease language. But NLIH's opposition explains that the lease language is broad, that the duties extend to claims and liabilities resulting directly or indirectly from RAMCO's operations, and that ARCO's broad complaint triggered those duties at least enough to preclude dismissal on the pleadings. Discovery is therefore required before the Court can fairly resolve El Paso's contrary factual theory under Rule 56.

## III. The discovery NLIH seeks is limited, targeted, and essential.

NLIH does not seek open-ended merits discovery. Rather, NLIH seeks a focused set of discovery tailored to the specific extra-record issues El Paso has injected into its motion. The requested discovery falls into six categories.

### A. ARCO testimony regarding claim scope and alleged disclaimer.

NLIH seeks Rule 30(b)(6) testimony and, if appropriate, testimony from relevant ARCO fact witnesses regarding the actual scope of the claims asserted in ARCO's First Amended Complaint; whether ARCO's pleaded cost pool includes, directly or indirectly, costs attributable to RAMCO/El Paso operations in the Argentine Workings or related connected facilities; whether ARCO has adopted any binding and permanent limitation excluding such costs; and whether ARCO's later statements are intended to constrain its experts, trial positions, or equitable allocation arguments.

This discovery is essential because El Paso's motion depends on the proposition that ARCO's later litigation statements conclusively narrow the otherwise broad allegations of ARCO's complaint. Without discovery, NLIH has no fair opportunity to test whether those statements are complete, permanent, consistent with ARCO's internal analyses, or intended to have the sweeping preclusive effect El Paso asserts.

**B.   ARCO documents concerning allocation and cost attribution.**

NLIH seeks targeted document discovery from ARCO concerning allocation analyses, internal memoranda, expert materials, communications, and modeling addressing attribution of AMD, metals loading, drainage pathways, or response costs to RAMCO/El Paso operations or to the Argentine Workings more generally. NLIH also seeks documents addressing orphan shares, non-party shares, and whether any part of the broader Removal Action cost pool includes costs associated with non-NLIH conduct.

This discovery is essential because NLIH's opposition explains that ARCO's complaint pleads a broad, system-wide cost pool, and because El Paso's theory can succeed only if ARCO's actual allocation position categorically excludes RAMCO/El Paso-related costs. NLIH cannot fairly rebut that assertion without access to ARCO's analyses and underlying materials.

**C.   El Paso testimony regarding RAMCO operations.**

NLIH seeks Rule 30(b)(6) testimony and related fact discovery from El Paso concerning the nature, scope, and consequences of RAMCO/El Paso's operations under the 1940 and 1941 agreements, including use and development of the Argentine Shaft, extension of underground workings, dewatering activities, exploratory and mining work, and any conduct bearing on groundwater flow, drainage conditions, sulfide exposure, or metals loading in the connected workings and the St. Louis Tunnel system.

This discovery is essential because NLIH's contract claims and opposition both rest on the proposition that RAMCO/El Paso's operations are intertwined with the site conditions and costs that ARCO seeks to allocate. El Paso asks the Court to negate that proposition as a matter of law before discovery. NLIH cannot fairly oppose that request without discovery into what RAMCO actually did and how those operations relate to the site conditions at issue.

**D.   El Paso documents regarding historical operations and tender response.**

NLIH seeks historical mining records, maps, engineering materials, environmental

and hydrogeologic records, successor-liability documents, and internal analyses relating to RAMCO's operations and their relationship to the Argentine Workings, the St. Louis Tunnel system, AMD, and metals loading. NLIH also seeks El Paso's claim-handling, tender-response, and internal decision-making materials regarding NLIH's requests for defense and indemnity.

This discovery is essential because El Paso's motion seeks to extinguish NLIH's claims for defense costs and contract-based protection without allowing NLIH access to the very evidence that bears on whether El Paso's contractual duties were triggered and whether El Paso had a legitimate basis for refusing NLIH's tender.

**E.    Discovery regarding the scope and permanence of the asserted waiver.**

NLIH seeks discovery concerning whether ARCO has amended, or intends to amend, its pleading to embody the limitation ARCO has stated and whether ARCO's experts will exclude RAMCO/El Paso-related costs; whether ARCO reserves the right to present contrary arguments or evidence later.

This discovery is essential because El Paso is attempting to convert litigation statements by ARCO into a complete defense to NLIH's claims. NLIH cannot fairly respond to that theory on summary judgment, without a factual record and without confirming the exact extent of the limitation.

**F.    Limited expert discovery, if necessary.**

To the extent needed, NLIH seeks limited expert disclosure or expert discovery concerning the hydrogeologic and mining relationship between RAMCO/El Paso's operations and the site conditions driving the current Removal Action. NLIH's opposition explains that the present dispute involves a hydrologically connected system, unresolved allocation issues, and factual questions concerning whether RAMCO's operations contributed directly or indirectly to AMD, metals loading, drainage pathways, or mine-work conditions encompassed by the pleaded Removal Action.

This expert discovery is essential if the Court reaches the issue under Rule 56

because El Paso's no-trigger theory rests on factual propositions about site contribution and cost attribution that have not yet been developed through discovery or expert analysis.

## IV.   <u>**NLIH has acted diligently, and the requested relief is modest**</u>.

NLIH has acted diligently. As reflected in NLIH's opposition, El Paso was only recently brought into the case on the lease-based claims, no depositions had yet occurred at the time of the April 24, 2026 hearing, and the factual subjects raised by El Paso's converted summary-judgment theory overlap with ongoing merits and allocation issues in the case. NLIH is not seeking to delay adjudication indefinitely. It seeks only a fair opportunity to develop the specific factual record needed to oppose the extra-pleading theories El Paso has chosen to raise.

The requested relief is narrow, practical, and tailored to the very extra-record theories El Paso chose to inject into a purported Rule 12 motion. A 90-day period for focused discovery, followed by a supplemental opposition, would allow the Court to decide any converted Rule 56 motion on a developed record rather than on selective excerpts from later advocacy statements and unresolved factual assumptions about claim scope, waiver, and RAMCO/El Paso's contribution to site conditions.

## <u>CONCLUSION</u>

For the foregoing reasons, NLIH respectfully requests that, if the Court considers matters outside the pleadings in connection with El Paso's motion, the Court treat the motion as one under Rule 56, defer consideration of or deny the motion without prejudice under Rule 56(d), permit the limited discovery described above, and allow NLIH to file a supplemental opposition after that discovery is completed.

Dated: June 12, 2026

Respectfully submitted,

/s/ Joel L. Herz
Joel L. Herz
LAW OFFICES OF JOEL L. HERZ
La Paloma Corporate Center
3573 East Sunrise Drive, Suite 215
Tucson, Arizona 85718
Telephone: 520-360-4380
joel@joelherz.com
Attorney for Defendant and Third-Party Plaintiff
NLI Holdings, Inc., as successor by merger to
NL Industries, Inc. and NL Environmental
Management Services

**CERTIFICATION PURSUANT TO D.C.Colo.LCivR 7.1(a)**

Counsel for NLIH conferred with counsel for El Paso on June 10, 2026 regarding the relief sought in this Motion. El Paso opposes the relief requested in this Motion.

## AI CERTIFICATION
## CERTIFICATION REGARDING THE USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

1.      The undersigned is an attorney-at-law, admitted in this Court, and sole practitioner with the law firm of Law Offices of Joel L. Herz, attorney for Defendant/Third Party Plaintiff NLI Holdings, Inc. as successor by merger to NL Industries, Inc. and NL Environmental Management Services ("NLIH").

2.      The undersigned submits this certification in support of NLI Holdings, Inc. and NL Environmental Management Services' Motion Under Fed. R. Civ. P. 56(d) to Defer Consideration of, or Deny Without Prejudice, El Paso Remediation Company's Motion to Dismiss if the Court Considers Matters Outside the Pleadings and pursuant to the Court's December 1, 2025 Standing Order Regarding the Use of Generative Artificial Intelligence in Court Filings.

3.      The undersigned certifies that generative artificial intelligence— specifically, Perplexity, was used to draft this filing.  The undersigned further certifies that NLIH was advised of and consented to such use.  All cited authority was manually reviewed by the undersigned.

Date:  June 12, 2026

/s/ Joel L. Herz
Joel L. Herz

15

## CERTIFICATE OF SERVICE

I certify that on the 12th day of June, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Joel L. Herz
Joel L. Herz